**Warren G. BRIGGS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12560.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 14, 1955.

Decided July 28, 1955.

Mr. James Mitchell Jones, Washington, D. C., for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Mr. Leo A. Rover, U. S. Atty., and Messrs. Lewis Carroll and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, WASHINGTON and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant Briggs was arrested under a charge of robbery. Being seventeen years old he was delivered into custody of Juvenile Court authorities. That court waived jurisdiction, pursuant to authority granted by statute,[1] and Briggs was indicted, tried and convicted in the District Court.

On this appeal Briggs says the statute which permits the waiver of jurisdiction by the Juvenile Court is void because

---

1. 52 Stat. 599 (1938), as amended, D.C. Code § 11–914 (1951), reading as follows:

"If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation,

unconstitutional for lack of standards. The statute says merely that if a child sixteen or seventeen years old is charged with a felony the Juvenile Court judge may, after investigation, waive jurisdiction and thus release the child into the processes of the District Court. Briggs says the processes and the penalties of the District Court and those of the Juvenile Court are wholly different; indeed in the one case he is tried for a crime and if convicted is a criminal, whereas in the other case no crime or criminal record is involved. He says he, as an accused person, is entitled to know with precision what his liabilities are. This, he says, he cannot know when he does not know the bases upon which or the reasons for which he is released by one court to the other.

Briggs illustrates his point by the supposititious cases of two boys charged with the same felony. Juvenile Court jurisdiction is waived as to one but not as to the other. One is sent to the penitentiary and has a criminal record. The other goes to school and no record is entered against him. Briggs says a statute which produces such a result, without containing ascertainable and appliable criteria for determination of the difference in treatment, is void.

The argument overlooks two phases of the matter. The first phase thus overlooked is the substantive structural relationship of the Juvenile Court Act to the general criminal laws of the District of Columbia. The argument overemphasizes that provision of the Juvenile Court Act[2] which states, "Except as herein otherwise provided, the court [Juvenile Court] shall have original and exclusive jurisdiction of all cases and in proceedings: (a) Concerning any child coming within the terms and provisions of this chapter." Briggs says that provision put exclusive jurisdiction over his case in the Juvenile Court and so, when it was transferred to the District Court, a new jurisdiction and a new procedure with new penalties were invoked. But the "original and exclusive jurisdiction" clause is coupled with a provision permitting the judge in her discretion to waive that jurisdiction. So in substance Briggs was never outside the general criminal statutes. The original-and-exclusive-jurisdiction clause, coupled with the waiver clause, is merely a procedural device for putting child offenders within the remedial treatment of the Juvenile Court if it appears after investigation that such disposition is in the interest of the public and of the child. The two courses of justice are not separate and independent systems. They are correlated parts of a single system. The Juvenile Court system is an adjunct to the general system of criminal justice. It affords the arm *parentis patriae* to those who need and will profit by it. It does not constitute a separate criminal justice upon a chronological age basis. It falls into the same general category as probation, parole, the Youth Offender acts, and similar enactments. This is a concept of correction which necessarily lies within the judgment of the court.

The old statute of 1876 had put this same treatment for juvenile offenders—commitment to a corrective school—in the discretionary power of the regular trial courts.[3] The Juvenile Court Act of 1906 gave the Juvenile Court exclusive jurisdiction over juveniles.[4] The 1938 Act[5] inserted the waiver provision, among other changes. The effect of this change was to return juveniles to possible conviction and imprisonment, as had been the case with respect to felonies

waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this Act in conducting and disposing of such cases."

2. 52 Stat. 596 (1938), D.C.Code § 11-907 (1951).

3. Act of May 3, 1876, 19 Stat. 49, 50.

4. Act of March 19, 1906, 34 Stat. 73.

5. Act of June 1, 1938, 52 Stat. 596.

prior to 1906. When jurisdiction over Briggs was waived by the Juvenile Court, he was not thereby in substance transferred to a new, separate, independent jurisdiction. What happened to him was merely that the processes available within the judgment of the court to those who after investigation seem to merit such processes, were withdrawn from him.

The second phase of the situation overlooked by Briggs's argument is the information, or knowledge, to which an accused person is entitled. A person accused under an ordinary criminal statute does not know with precision the liability to which he will be subjected. He knows two things. He knows the elements which comprise the offense with which he is charged. And he knows the maximum penalty to which he is liable. A person indicted in the District Court for robbery may, if convicted, be sent to a penitentiary for fifteen years, or he may be sent to Lorton Reformatory, or he may be given a suspended sentence and be placed on probation and not incarcerated at all. He does not know what will happen to him until it happens. In the case at bar Briggs knew the elements of the offense charged against him, robbery. And he knew the maximum penalty to which he was liable, fifteen years. He would have known neither more nor less than that had there been no Juvenile Court Act.

Referring to the two-boy illustration, precisely that difference in treatment can and frequently does occur in respect to two accused persons in any trial court. If both are convicted of the same or a similar offense, and one is a hardened criminal and the other his dupe, a first offender, the one may get an extended prison sentence and the other be placed on probation and not even leave home. This is the essence of modern penology. There are no precisely formulated criteria for the difference in result. It is an imponderable, a true exercise of judgment.

We are of opinion the waiver provision of the Juvenile Court Act is constitutional and valid.

Affirmed.