Maxie Leroy PEE, Appellant,

v.

UNITED STATES of America, Appellee.

James E. CURTIS, Appellant,

v.

UNITED STATES of America, Appellee.

Leroy S. JOHNSON, Appellant,

v.

UNITED STATES of America, Appellee.

Gordon A. MAGRUDER, Appellant,

v.

UNITED STATES of America, Appellee.
Nos. 14425–14428.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 5, 1959.

Decided June 25, 1959.

Mr. Lynn O. Coombs, Washington, D. C., with whom Mr. J. Leon Williams, Washington, D. C., was on the brief, for appellants.

Mr. Edgar T. Bellinger, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Mr. Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Mr. John E. Powell, Washington, D. C., (appointed by this court) filed a brief as amicus curiae, urging reversal.

Before PRETTYMAN, Chief Judge, and BAZELON and BURGER, Circuit Judges.

PRETTYMAN, Chief Judge.

■ These four appellants and one other were indicted in three counts for rape, robbery, and assault with a dangerous weapon, and appellant Johnson in an additional count for possession of a prohibited weapon. Three of appellants (Pee, Magruder and Johnson) were seventeen years of age or younger. Upon being arrested (two of these three on July 3, 1957, and the other one the next day) they were sent to the Receiving Home, maintained by the Board of Pub-

lic Welfare.[1] On July 18th the Juvenile Court waived jurisdiction [2] as to these three and ordered them "held for trial under the proceedings of the United States District Court for the District of Columbia." [3] On that same day they were taken before the Municipal Court, and thereafter preliminary examination was had and they were held for the grand jury. In due course they were tried upon the indictment in the District Court by a jury. They were found not guilty upon the charge of rape and guilty of robbery and assault with intent to commit rape. They were sentenced to serve four to fifteen years in a penal institution.

In the course of the trial the Government presented as witnesses police officers who proposed to testify concerning statements allegedly made to them by the defendants. Objections were made, and hearings were held out of the presence of the jury. The court ruled that the question of the voluntary or involuntary nature of the statements should be presented to the jury. Objection was also made that the statements were made while the defendants were in the custody of the police and had not been advised of their rights not to make a statement. The prosecutor replied, in part, that the defendants were juveniles and the Federal Criminal Rules were not applicable to them. The trial court overruled those objections.

Upon this appeal the appellants assert that the rule in Mallory [4] applies. The Government says the Mallory-McNabb (McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819), doctrine does not apply. It states its position as being that the doctrine is not applicable to individuals within the jurisdiction of the Juvenile Court. But the real controversy is whether the doctrine applies after the jurisdiction of the Juvenile Court has been waived.

The normal treatment provided by our society for alleged offenders against its laws is a formal charge of the offense, a formal trial, and, if conviction results from the trial, then punishment or compulsory removal for a time from contact with society. Such offenses are denominated crimes, and the offenders are denominated criminals. Public records are made of such events. But from the earliest times children of certain ages have been deemed by our law to be incapable of crime. And in recent times children of certain ages have been removed from the normal treatments provided for crimes and criminals. This has been in part because of a doubt as to the capacity of children to entertain the vicious will which is an essential element of crime in our jurisprudence, but in much greater part because of a belief that the interests of society are best served by a solicitous care and training of those children shown by circumstances to be in need of such care and training. These concepts in respect to children have evolved into elaborate systems of procedure. In the event a child commits an offense against the law, the state assumes a position as *parens patriae* and cares for the child. Such a one is not accused of a crime, not tried for a crime, not convicted of a crime, not deemed to be a criminal, not punished as a criminal, and no public record is made of his alleged offense. In effect he is exempt from the criminal law.

1. 52 Stat. 598 (1938), as amended, D.C. Code § 11–912 (1951).

2. 52 Stat. 599 (1938), as amended, D.C. Code § 11–914 (1951).

3. The complaints as to which the Juvenile Court waived jurisdiction were as to Magruder robbery and assault with intent to rape, as to Pee assault with intent to rape, and as to Johnson assault with a deadly weapon and assault with intent to rape. No waiver of jurisdiction as to a complaint of rape was made. Whether the susequent indictment of these juveniles upon a charge of rape was valid under such circumstances is not before us, the point not having been raised in the District Court or in briefs or argument here. Neither is the question before us whether Pee could be indicted for robbery under those circumstances.

4. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

Such a system for child offenders is provided by our Juvenile Court Act.[5] That act applies to persons under eighteen years of age.[6] It provides that, whenever any person gives an officer of the Juvenile Court information that a child is within the provisions of the act, an investigation shall be made and a "petition", if warranted, filed.[7] Summons is issued to the person having custody of the child.[8] The child may be taken and kept in custody by the Board of Public Welfare.[9] Hearing is had but not in public.[10] The court may place the child on probation or commit him to the Board of Public Welfare or to certain named schools, or "Make such further disposition of the child as may be provided by law and as the court may deem to be best for the best interests of the child".[11]

█ The foregoing proceedings are not criminal cases.[12] The constitutional safeguards vouchsafed a juvenile in such proceedings are determined from the requirements of due process and fair treatment,[13] and not by the direct application of the clauses of the Constitution which in terms apply to criminal cases. So far as we can ascertain, with few exceptions in a multitude of cases, this has been the ruling of the courts.[14] By the same token the Federal Rules of

Criminal Procedure do not apply to these proceedings.[15]

Our problem arises from the following provision in the statute:[16]

"If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this Act in conducting and disposing of such cases."

Thus, in the case of a child sixteen years of age or older charged with a felony, the Juvenile Court may either proceed with the case itself or waive its jurisdiction. We examine carefully the terms of the quoted section. 1. It requires a "full investigation". That obviously means an inquiry not only into the facts of the alleged offense but also into the question whether the *parens patriae* plan of procedure is desirable and proper in the particular case.[17] 2. The

5. 52 Stat. 596 (1938), as amended, D.C. Code §§ 11–901—11–950 (1951).

6. D.C.Code § 11–906 (1951).

7. Id. § 11–908.

8. Id. § 11–909.

9. Id. § 11–912.

10. Id. § 11–915.

11. Ibid.

12. This rule was announced for this jurisdiction in 1904 in Rule v. Geddes, 23 App.D.C. 31 and was firmly established here in 1941 by Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905, citing many authorities. The proposition is supported by decisions of the highest courts in forty-two states, and by statutes in the other seven states and Hawaii. A list of such cases and statutes will be found in Appendix A to this opinion.

13. Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 236 F.2d 666.

14. A list of authorities to this proposition generally, and specifically to bail, indictment, speedy and public trial, trial by jury, confrontation by witnesses, self-incrimination, and assistance of counsel, will be found in Appendix B to this opinion.

15. That rules of criminal procedure in the states do not apply is established by many of the cases listed in Appendix A hereto. See also 5 Wigmore, Evidence § 1400 (3d.ed. 1940).

16. D.C.Code § 11–914 (1951).

17. While the words of the statute make the waiver provision applicable to a child of any age charged with a capital offense or one punishable by life imprisonment, we note, without intimation of opinion, the established rule of common law that

quoted provision authorizes the Juvenile Court to order the child held for trial under the regular procedure of the District Court. Thus the Juvenile Court judge places the child in the initial stages of the procedure which will eventually bring him to trial as a criminal in the District Court. That process includes a charge, a preliminary examination, a plea, advice as to his constitutional rights, indictment, and then, in the District Court, arraignment and later trial. Once the Juvenile Court has entered its order initiating this process, the child is "under the regular procedure" of the District Court. 3. The statute then provides: " * * * or such other court [*i. e.*, the District Court] may exercise the powers conferred upon the juvenile court in this Act in conducting and disposing of such cases." To exercise the powers conferred upon the Juvenile Court in conducting such cases and also in disposing of such cases means, briefly, that the District Court may proceed in all respects exactly as the Juvenile Court would proceed in the case. Thus, after such a child has arrived in the District Court, that court may redetermine the question whether the normal processes of the criminal law should apply to the case and to the child, or whether the plan otherwise applicable to him as a juvenile, that is, the *parens patriae* plan, should be applicable to him.

Quite clearly, if the District Court decides to pursue the normal criminal law processes—"the regular procedure of the court"—all the constitutional protections applicable to criminal cases and all the rules of criminal procedure in that court apply to such a case just as they apply to any other case of an alleged crime. But also quite clearly, if the District Court decides to conduct the case under the powers conferred upon the Juvenile Court, the rights of the child and the rules applicable to the Juvenile Court procedure apply.

The sum of the quoted statute requires the District Court to make a clear choice between the procedure and processes which it will apply in the case of a juvenile as to whom the Juvenile Court has "waive[d] jurisdiction". Of course it is not necessary that the court formally make such a choice; its choice may be implicit in the manner in which it proceeds. But the District Court cannot proceed in part under its "regular procedure" and in part under the "powers conferred upon the juvenile court". It must do one or the other.

When put together, the provisions of the statute which we have quoted pose something of a procedural problem. Obviously the first time the District Court is aware of the presence of a juvenile within its jurisdiction is when the indictment is presented. Thus every child as to whom jurisdiction has been waived by the Juvenile Court has been subjected to part of "the regular procedure" of the District Court before that court has an opportunity to decide whether it will proceed in the conduct of the case under its regular procedure or under the powers conferred upon the Juvenile Court. If it chooses the latter course it would seem clear that it should dismiss the indictment, thus striking the criminal charge against the child, order a petition to be filed, and direct the transfer of the child from the jail to the Receiving Home. Thereafter it should proceed in accordance with the Juvenile Court procedural rules.

In the cases at bar the District Judge was proceeding under the regular procedure of the District Court. The accused had been indicted; they were being tried by a jury on the indictment; the trial was public; they were found guilty of the offenses; and the court sentenced them to the penitentiary. Midway of the procedure, however, the District Judge imported from the Juvenile Court a rule of evidence, applicable in that court but not applicable in the regular proce-

a child under the age of seven is conclusively presumed incapable of entertaining a criminal intent. 4 Blackstone,

Commentaries * 22, and cases collected at 1 Wharton, Criminal Law and Procedure § 35 (1957).

dure of the District Court. This was error. Since the juveniles had been removed from the processes specially provided for juveniles, they were subject to all the processes applicable to persons accused of crime and also, by reason of that fact, entitled to all the protections and privileges accorded to accused persons in criminal cases. The proceedings as to them, being "the regular procedure" of the District Court, were controlled by the Federal Rules. So the doctrine of the Mallory case applied.

We come, then, to the question whether the proffered statements of the defendants were admissible under Mallory. We think that question had best be answered upon facts presented to the trial court. Since that court ruled upon their admissibility upon the theory that Mallory did not apply, an inquiry into the facts pertinent to a decision under the Mallory rule was not appropriate. We leave this matter to be determined by the trial court upon retrial.

■ Appellant Curtis presents a different problem from the juvenile appellants. He testified he was nineteen years old at the time of the alleged offense, and this statement was not contradicted in the record. He was treated as an adult throughout, being sent to jail upon arrest and no complaint being filed against him in the Juvenile Court. However, upon the trial he was apparently included in the ruling that the Mallory doctrine did not apply. Two officers testified to statements made to them by Curtis, one allegedly at the time of his arrest and the other the next day, after a line-up. Whether the objections made by counsel included objections to the statements by Curtis is not clear from the record. No specific objection was made by his lawyer, but apparently throughout the trial the three defense counsel acted on behalf of all defendants. The Mallory doctrine applies to Curtis. Whether that doctrine rendered the statements by him inadmissible is left to disposition by the trial court upon the retrial.

We set aside the adjudication and sentence[18] (but not the verdict) in order to remand the case with directions to the District Court to hold a hearing upon the question whether the Mallory case requires that the statements of appellants be held inadmissible. If the court decides those statements were inadmissible, it will grant a new trial. If it decides the statements were properly admitted, it will enter its adjudication and sentence upon the verdict heretofore rendered, having in mind, of course, the time already served.

So ordered.

### Appendix A [Footnote 12]

The following authorities support the proposition that proceedings in juvenile courts are not criminal cases:

*Alabama*—Ala.Code, ch. 7, tit. 13, §§ 377-378 (1940); and see Love v. State, 36 Ala.App. 693, 63 So.2d 285, 286 (1953).

*Alaska*—Alaska Comp. Laws Ann. § 51-3-22 (1958).

*Arizona*—Arizona State Dept. of Public Welfare v. Barlow, 80 Ariz. 249, 296 P.2d 298, 300 (1956).

*Arkansas*—Ex parte King, 141 Ark. 213, 217 S.W. 465, 467 (1919).

*California*—Ex parte Daedler, 194 Cal. 320, 228 P. 467, 469 (1924).

*Colorado*—Kahm v. People, 83 Colo. 300, 264 P. 718, 719 (1928).

*Connecticut*—Cinque v. Boyd, 99 Conn. 70, 121 A. 678, 680-681 (1923).

*Delaware*—Del.Code Ann. tit. 10, § 1102 (b).

*Florida*—Ex parte Kitts, 109 Fla. 202, 147 So. 573, 575 (1933).

*Georgia*—Hampton v. Stevenson, 210 Ga. 87, 78 S.E.2d 32, 33 (1953).

*Idaho*—Hewlett v. Probate Court, 66 Idaho 690, 168 P.2d 77, 79 (1946).

*Illinois*—Lindsay v. Lindsay, 257 Ill. 328, 100 N.E. 892, 893, 45 L.R.A.,N.S., 908 (1913).

*Indiana*—Harris v. Souder, 233 Ind. 287, 119 N.E.2d 8, 11 (1954).

---

18. Fed.R.Crim.P. 32(b), 18 U.S.C.A.

*Iowa*—Wissenberg v. Bradley, 209 Iowa 813, 229 N.W. 205, 67 A.L.R. 1075 (1929).

*Kansas*—In re Turner, 94 Kan. 115, 145 P. 871, 873 (1915).

*Kentucky*—Marlow v. Commonwealth, 142 Ky. 106, 133 S.W. 1137, 1140 (1911).

*Louisiana*—State v. Smith, 209 La. 363, 24 So.2d 617, 619 (1945).

*Maine*—Wade v. Warden of State Prison, 145 Me. 120, 73 A.2d 128, 132 (1950).

*Maryland*—Moquin v. State, 216 Md. 524, 140 A.2d 914, 916 (1958).

*Massachusetts*—Farnham v. Pierce, 141 Mass. 203, 6 N.E. 830 (1886).

*Michigan*—Robison v. Wayne Circuit Judges, 151 Mich. 315, 115 N.W. 682, 686 (1908).

*Minnesota*—Ex parte Peterson, 151 Minn. 467, 187 N.W. 226, 227 (1922).

*Mississippi*—Wheeler v. Shoemake, 213 Miss. 374, 57 So.2d 267, 277 (1952).

*Missouri*—State ex rel. Matacia v. Buckner, 300 Mo. 359, 254 S.W. 179, 180 (1923).

*Montana*—State ex rel. Palagi v. Freeman, 81 Mont. 132, 262 P. 168, 170–171 (1927).

*Nebraska*—State ex rel. Miller v. Bryant, 94 Neb. 754, 144 N.W. 804 (1913).

*Nevada*—N.R.S. 62:200 (1957).

*New Hampshire*—In re Poulin, 100 N.H. 458, 129 A.2d 672, 673 (1957).

*New Jersey*—Ex parte Newkosky, 94 N. J.L. 314, 116 A. 716, 717 (1920).

*New Mexico*—In re Santillanes, 47 N.M. 140, 138 P.2d 503, 508, 511 (1943).

*New York*—People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 355, 86 A.L.R. 1001 (1932).

*North Carolina*—State v. Burnett, 179 N. C. 735, 102 S.E. 711, 714 (1920).

*North Dakota*—State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W.2d 514, 534 (1953).

*Ohio*—Malone v. State, 130 Ohio St. 443, 200 N.E. 473, 478 (1936).

*Oklahoma*—Killian v. Burnham, 191 Okl. 248, 130 P.2d 538, 539 (1942).

*Oregon*—State v. Dunn, 53 Or. 304, 99 P. 278, 280 (1909).

*Pennsylvania*—Commonwealth v. Fisher, 213 Pa. 48, 62 A. 198, 199 (1905).

*Rhode Island*—Givardi v. Juvenile Court of Sixth Judicial Dist., 49 R.I. 336, 142 A. 542, 543 (1928).

*South Carolina*—Code of Laws of S. C., ch. 7, § 15–1202 (1958).

*South Dakota*—SDC, 43.0327 (1939).

*Tennessee*—Childress v. State, 133 Tenn. 121, 179 S.W. 643, 644 (1915).

*Texas*—State v. Thomasson, 154 Tex. 151, 275 S.W.2d 463 (1955).

*Utah*—Mill v. Brown, 31 Utah 473, 88 P. 609, 613 (1907).

*Vermont*—In re Gomez, 113 Vt. 224, 32 A.2d 138, 139 (1943).

*Virginia*—Jones v. Commonwealth, 185 Va. 335, 38 S.E.2d 444, 447–448 (1946).

*Washington*—Weber v. Doust, 81 Wash. 668, 143 P. 148, 150 (1914).

*West Virginia*—State ex rel. Hinkle v. Skeen, 138 W.Va. 116, 75 S.E.2d 223, 227 (1953), certiorari denied 345 U.S. 967, 73 S.Ct. 954, 97 L.Ed. 1385 (1953).

*Wisconsin*—State v. Scholl, 167 Wis. 504, 167 N.W. 830, 831 (1918).

*Wyoming*—Wyo. Comp. Stat. ch. 58, § 602 (1945).

*Hawaii*—Hawaii Rev. Laws, § 333–1 (1955).

*District of Columbia*—Thomas v. United States, 74 App.D.C. 167, 169, 121 F.2d 905, 907 (1941); Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666 (1956). The legislative history of the Juvenile Court Act fully supports our holding in the above cases. See 81 Cong.Rec. 1001 (1937); and see D.C. Code § 11–915 (1951).

*Accord:* Ex parte Januszewski, 196 F. 123, 127, 129 (C.C.S.D. Ohio 1911).

A state-by-state summary of juvenile court delinquency jurisdiction is set out in Sussman, Juvenile Delinquency, App. I, p. 65 (Rev. ed., Oceana Pub., N.Y., 1959).

Appellants have cited the following state decisions in support of the proposi-

tion that under certain circumstances "he [the juvenile] shall be accorded all the protection given by the Constitution and the procedural rules deriving therefrom:"

> People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001 (1932); In re Contreras, 109 Cal.App.2d 787, 241 P.2d 631 (1952); In re Holmes, 379 Pa. 599, 109 A.2d 523 (1954); Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269, 151 A.L.R. 1217 (1944); State ex rel. Imel v. Municipal Court, 225 Ind. 23, 72 N.E.2d 357 (1947); Jackson v. Balkcom, 210 Ga. 412, 80 S.E.2d 319 (1954); People v. Shannon, 2 N.Y.2d 792, 158 N.Y.S.2d 334, 139 N.E.2d 430 (1956).

Upon careful examination of these cases we note: (1) they do not hold that it is by reason of the specific constitutional provisions applicable to criminal cases that such rights are applicable in juvenile court proceedings (People v. Lewis, supra, 183 N.E. at page 355; In re Holmes, supra, 109 A.2d at page 525; Dendy v. Wilson, supra, 179 S.W.2d at page 274); (2) the normal criminal rules are applicable to juveniles when the pertinent statute contemplates a criminal trial in a non-juvenile court (State ex rel. Imel v. Municipal Court, supra; Jackson v. Balkcom, supra); (3) such criminal proceedings are totally distinct from juvenile delinquency proceedings (People v. Shannon, supra; and see People v. Shannon, 1 A.D.2d 226, 149 N.Y.S.2d 550, 555 (1956)); and (4) the child involved in a juvenile court proceeding is entitled to due process (In re Contreras, supra, 241 P.2d at page 634). However, what constitutes due process depends on the circumstances of each individual case.

### Appendix B [Footnote 14]

The following authorities support the proposition that the provisions of the Constitution which specifically apply to criminal cases are not applicable by reason of such specific provisions to juvenile court proceedings:

> Thomas v. United States, 74 App. D.C. 167, 169, 121 F.2d 905, 907 (D.C.Cir.1941); Cinque v. Boyd, 99 Conn. 70, 121 A. 678, 680 (1923); Commonwealth v. Fisher, 213 Pa. 48, 62 A. 198, 199–200 (1905); and see Paulsen, Fairness to the Juvenile Offender, 41 Minn.L.Rev. 547 (1957).

*As to Bail:*

> Cinque v. Boyd, 99 Conn. 70, 121 A. 678, 680, 682, 685 (1923). The proposition that there is no right to bail *after* the adjudication of delinquency is endorsed by a majority of the courts. See annotation, 160 A.L.R. 287.

*As to Grand Jury:*

> Childress v. State, 133 Tenn. 121, 179 S.W. 643, 644 (1915). See annotation, 45 A.L.R. 1533; 85 A.L.R. 1099; and see Briggs v. United States, 96 U.S.App.D.C. 392, 394, 226 F.2d 350, 352 (D.C.Cir.1955).

*As to Speedy and Public Trial:*

> In re Mont, 175 Pa.Super. 150, 103 A.2d 460, 463 (1954).

*As to Trial by Jury:*

> Lindsay v. Lindsay, 257 Ill. 328, 100 N.E. 892, 895, 45 L.R.A.,N.S., 908 (1913); Annotation, 67 A.L.R. 1082.

*As to Self-Incrimination:*

> People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 354, 86 A.L.R. 1001 (1932); Annotation, 43 A.L.R.2d 1128, 1133–1138.

*As to Confrontation:*

> In re Holmes, 379 Pa. 599, 109 A.2d 523 (1954); Annotation, 43 A.L.R. 2d 1141, 1146.

*As to Right to Counsel:*

> People ex rel. Weber v. Fifield, 136 Cal.App.2d 741, 289 P.2d 303 (1955).