**UNITED STATES**

v.

**Jimmy W. CAVINESS.**

**Cr. No. 732–64.**

United States District Court

District of Columbia.

March 18, 1965.

---

Martin R. Hoffman, Asst. U. S. Atty., for the United States.

Howard F. Roycroft, Washington, D. C., for defendant.

PINE, District Judge.

This case was assigned to me for trial on January 26, 1965. When it was called, defendant verbally moved that I "convene as a Juvenile Court."[1]

His counsel urged at the beginning of protracted argument that the Juvenile Court had not conducted the "full investigation" required by the statute prior to waiver, and that therefore the waiver was invalid.[1] However, as the argument progressed, it broadened into other areas of alleged invalidity. That this Court is the proper forum to determine the question of claimed invalidity has been determined by the United States Court of Appeals for this Circuit.[2] According to defendant's contention, this invalidity, if established, requires that I either convene as a Juvenile Court or dismiss the indictment and "remand" the case back to the Juvenile Court for further consideration. But both he and government counsel agreed, however, that it is doubtful whether I have the legal authority to remand under the ruling in Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959). On this latter point I agree with counsel. Therefore I conclude that if I find the waiver to be *invalid* I have only authority to convene as a Juvenile Court or order defendant for trial in the District Court, and that if I find the waiver to be *valid,* I likewise may only convene as a Juvenile Court or may order him for trial in this Court.[2] and 3

1. Sec. 11–1553, D.C.Code 1961 Ed., 1965 Supp. The statute provides that, in case of waiver of jurisdiction by the Juvenile Court, this Court "may exercise the powers conferred upon the Juvenile Court."

2. Green v. United States, 113 U.S.App. D.C. 348, 308 F.2d 303 (1962); Kent v. Reid, 114 U.S.App.D.C. 330, 316 F.2d 331 (1963).

3. To me this state of the law presents an anomaly for the following reasons.
   The District Court has the authority and duty to determine whether a waiver is valid. In making its determination it has a limited area of review, i. e., the area of review applicable to special tribunals and administrative bodies, (Kent v. United States, D.C.Cir., 343 F.2d 247 No. 17935 (October 26, 1964), and the other authorities cited herein.)

The question involved on such review is not whether the Court would reach a different conclusion, but whether the decision reviewed has a rational basis and is not arbitrary or capricious. As stated in Kent v. United States, supra, "the reviewing function of the District Court and of this court vis-a-vis the merits of a waiver decision by the Juvenile Court must necessarily reside within narrow limits and depend, for its affirmative exercise, upon the demonstrable existence of arbitrariness or capriciousness." Further in this opinion the Court has this to say: "The revision of that trained judgment [Juvenile Court judgment] in a particular case by a non-specialist tribunal [District Court] is a venture not to be

Before discussing the points raised, it is desirable that I put the case in context procedurally and factually, as follows:

It appears from the file that on July 7, 1964, Honorable Morris Miller, Chief Judge of the Juvenile Court of the District of Columbia, caused to be filed in this Court a paper writing waiving jurisdiction over defendant and ordering him to be held for trial under the regular procedure of the United States District Court for the District of Columbia for the offense of assault with a dangerous weapon allegedly committed on June 13, 1964, in the vicinity of the recreation room of the National Training School for Boys, the complainant being Stanley L. Gallin.

On the same day, a complaint was filed by Stanley L. Gallin before the United States Commissioner, and a hearing was held thereon at which defendant was informed of the complaint and of his right to have a preliminary hearing and to retain counsel. He was further advised that he was not required to make a statement; that any statement made by him might be used against him, and that he had the right to cross examine witnesses against him and introduce evidence in his own behalf. It further appears from the record of the proceedings before the Commissioner that defendant requested a hearing, at the conclusion of which the Commissioner found probable cause and defendant was held to answer in the United States District Court.

Thereafter, defendant was indicted in a two count indictment, charging in count one, an assault on Stanley L. Gallin, an officer and employee of the Department of Justice, namely, a senior correctional officer, while he was engaged in the performance of his official duties, and in count two an assault upon Stanley L. Gallin with a dangerous weapon, namely, a telephone receiver.

Counsel was thereupon appointed to represent defendant, and on his motion defendant was committed to Saint Elizabeths Hospital for a mental examination and report to this Court. Pursuant to that order defendant was committed to the Hospital, following which the Acting Superintendent certified in writing that it was "our" opinion that defendant was mentally competent for trial; that on the date of the alleged assault he was suffering from a "personality trait disturb-

undertaken lightly and without patent justification."

However, upon a determination by this Court of the *validity* of a waiver, it is then required to review the merits of the Juvenile Court's decision and make its own separate decision, substituting its judgment for that of the Juvenile Court, which may or may not agree with the latter, albeit there has been a prior holding of validity.

Furthermore, if the District Court finds the waiver to be *invalid*, it is not permitted to remand the case to the Juvenile Court under the Pee decision, *supra*, for further proceedings, but instead is required in such case to make its own separate decision as to whether it should proceed as a District Court or as a Juvenile Court. In other words, I do not understand why this Court is required to take the first step of determining whether the waiver is valid or invalid, when in any event it is compelled to make a subjective finding on the merits thereafter. This apparently would make the first step unnecessary. However, the procedure governing the District Courts is as above stated.

All this may be inherent in the modern day procedure for the treatment of delinquent juveniles, the *parens patriae* philosophy of the Juvenile Court Act, and may account for the pattern which is not in conformity with usual procedure. However, it does impose an additional burden on this Court and makes it ultimately an adjunct Juvenile Court whenever there is a waiver (Briggs v. United States, 96 App.D.C. 392, 226 F.2d 350), even though the waiver may be found to be valid. It also places a burden upon Judges, or perhaps I should say a Judge, as I am speaking only for myself, who does not have the "expertise" or facilities in matters involving the scientific and correct treatment of juvenile delinquents. But this "expertise" which the Courts seem to have glorified in their disposition of review of matters before specialized tribunals is something with which a person in many instances apparently becomes endowed immediately upon being clothed with the responsibility.

ance, emotionally unstable personality," and that they were unable to render a valid opinion as to productivity. Thereafter, and order was signed by another Judge of this Court in which it was found that defendant was mentally competent to stand trial. This order was approved by counsel for defendant. Thereupon the case was assigned to me for trial, preceding which the motion now before me for consideration was made, as above stated.

After hearing argument thereon, I ordered that the case be referred back to the Juvenile Court to "reconsider, in the light of the subsequent findings of the psychiatric staff of Saint Elizabeths Hospital * * *, whether its waiver of juvenile jurisdiction is proper, and whether its jurisdiction should be reassumed." The motion for me to convene as a Juvenile Court was held in abeyance pending a report from the Juvenile Court on this question.

In response I received a communication dated February 7, 1965 from the Chief Judge of the Juvenile Court in which he interpreted Pee v. United States, supra, and other decisions therein set forth to mean that the question "whether the waived juvenile should be treated as a juvenile is a matter which the United States District Court may determine by an examination of the social files," and stated that in his opinion, the Juvenile Court "irrevocably surrendered" its jurisdiction over the offense with which the defendant was charged when it waived his case to the United States District Court. He further added that the waiver was made after the "full investigation" required by the statute, but that he had reviewed the file since receipt of my order and that even if the Court should reassume jurisdiction, which he believed it could not do, he saw no reason to modify his earlier action. Finally, he took the position "that a reconsideration of the waiver of jurisdiction * * * is neither warranted nor authorized by law."

I replied to this letter from the Chief Judge on February 23, 1965, in which I stated, among other things, that I was aware of the Pee case on which he relied and "had no intention of 'remanding' this case to his court, but only ordered that it be 'referred back' to give it an opportunity to reconsider in the light of the subsequent findings of the psychiatric staff of Saint Elizabeths Hospital whether its waiver of juvenile jurisdiction was proper and whether its jurisdiction should be *reassumed.*'" (Italics supplied.) I further stated that my thought and belief were that the Juvenile Court would have authority, if it felt justified in so doing in the light of additional information, to reconsider and *vacate* its prior waiver, that I felt that the Juvenile Court might wish to take a "second look" and, if the facts justified it, to undo a previous decision if in the light of further evidence it was found to be erroneous. With this view Chief Judge Miller apparently disagrees. I further advised him that I would proceed in due course to hear the motion held in abeyance and that I would ask that the social files be made available for my consideration.

Subsequently, the motion to "convene as a juvenile court" again came on before me for consideration, at which time the testimony of one witness was offered, hereinafter referred to, and further argument was heard. The Motion was adjourned again, and further opportunity was given the Government to provide any additional evidence which it desired to submit as to what, if any, "standards" or "criteria" were employed in making the decision to waive jurisdiction to this Court, and as to what facilities were available to the Juvenile Court for treatment of mental disorders. Several days later counsel for both sides and defendant again appeared before me, and government counsel stated that it had no further evidence, and rested on what had been submitted, namely the social records, which were previously obtained for me by subpoena, and the testimony of Louis Levathes, Executive Director of the Juvenile Court. The Court supplied counsel for the defendant and the Government with the social records for their

perusal and for use in assisting the Court in determining the issues in the case, and the Motion was submitted. So much for the procedural posture of the case.

I shall now proceed to a discussion of the Motion. Section 11–1553, supra, provides that if a child sixteen years of age or older is charged with an offense which if committed by a person eighteen years of age or over is a felony, the Juvenile Court Judge "may, after *full investigation*, waive jurisdiction." (Italics supplied.) The first question before me involves the meaning of the term "full investigation," which defendant contends was not made in this case.

Turning to the case law on the subject, the Court of Appeals in 1959 in United States v. Dickerson, 106 U.S.App.D.C. 221, 271 F.2d 487 (1959), held that the "full investigation" which § 11–914 (now 11–1553) requires before the Juvenile Court can waive jurisdiction *includes informal* hearings as provided for in § 11–915 (now 16–2307, 2308)". (Italics supplied.) Sec. 16–2307 is the section of the Code providing that the Juvenile Court may conduct the hearings before it in an informal manner and that the general public shall be excluded.

In 1960 in Wilhite v. United States, 108 U.S.App.D.C. 279, 281 F.2d 642 (1960), where the claim was made that the Juvenile Court failed to conduct a "full investigation", the Court stated that "no *formal* hearing is required on a waiver of jurisdiction to the District Court" (italics supplied), and that the "investigation called for by the statute is an administrative process within the Juvenile Court," which "conducts such investigation as is needed to satisfy the Court as to what action should be taken on the question of waiver."

In 1963 the United States Court of Appeals in Kent v. Reid, supra, reiterated that no *formal* hearing was required in a waiver proceeding.

In 1959 in United States v. Stevenson, D.C., 170 F.Supp. 315, 318, Judge Keech of this Court held that the only requirement of a full investigation is that the Judge of the Juvenile Court be "fully advised of relevant facts, by such means as are available to him through the various branches of the Court, so that he may intelligently exercise his discretion." He was of the opinion that to construe the statute otherwise would "place an undue and unnecessary burden upon the judge, would be of little or no advantage to the child whose case is under consideration, and would inure to the detriment of other youngsters by denying them adequate and timely consideration by the judge". Further he held that there was no reason to take the phrase "full investigation" at other than its face value, and that a requirement that there be an investigation carries with it no command that a quasi-judicial or judicial investigation be conducted. The foregoing is a résumé of the case law on the meaning of "full investigation."

Now, turning to the facts as they appear in the Social Records. The Acting Superintendent of the National Training School under date of June 18, 1964, addressed a memorandum to "Mr. John Larkin, Director of Social Service, Juvenile Court of the District of Columbia, attention: Miss Ryder, Chief Intake Section", in which he made a report as to the date of defendant's arrival at the school, his conduct during the period of his detention at the school, and his involvement in the offense charged.

On June 25, 1964, the Intake Officer reported to Mr. Larkin on the subject of defendant's conduct at the school, and circumstances surrounding his commitment to the school and the incident involved herein, and made suggestions as to a waiver.

On June 26th Mr. Larkin, the Director of Social Services of the Juvenile Court reported in a memorandum to the Chief Judge of that Court on the subject of defendant's history, background and environment, the circumstances surrounding his commitment to the school, his prior involvement in criminal activities, his conduct at the school, suggestions with relation to the propriety of a waiver and

the recommendation of the District Attorney.

I give only the subjects disclosed in these reports and do not give a résumé of their contents because of what appears to be an interdiction against it by the terms of Sec. 11–1586(b), D.C.Code 1961, 1965 Supp.

The social records disclose that there was no hearing, formal or informal, but that there were a report from the Acting Superintendent of the National Training School to the Director of Social Service, a report from the Intake Officer to the Director of Social Service, and a report by the Director of Social Service to the Chief Judge. These reports disclose an investigation into the facts of the occurrence, the background, environment, history and prior criminal involvement of defendant, and the thinking, analysis and recommendations by the persons making the reports. These were all before the Chief Judge at the time he made his decision to waive.

■ Under the doctrine set forth in the above cases, this would appear to be sufficient to satisfy the requirement of a "full investigation", because it was "such investigation as is needed to satisfy that court as to what action should be taken on the question of waiver." Wilhite v. United States, supra.

■ However, defendant contends that the absence of a psychiatric report nullifies the validity of what was done. There is no suggestion or recommendation in the social records that defendant needed a psychiatric examination, and it was not until he came to this Court that such an examination was undertaken. This was initiated by defendant pro se in what appears to be his own handwriting. Later, this was supplemented by his Court appointed attorney in an amended motion. Assuming, arguendo, that there is a basis for the argument that the Juvenile Court did not investigate adequately in failing to obtain a psychiatric report before waiver, as contended by defendant, that would appear to have been cured by what was done thereafter. As herein above set forth, the Chief Judge of the Juvenile Court reported that he had reviewed the file since the receipt of my order of January 29, 1965, supra, (and this file included the psychiatric report) and that he saw no reason to modify the Court's earlier action. This would appear to be a nunc pro tunc consideration of the psychiatric report and a determination that if it had been before the Juvenile Court previously there would have been no change in its decision.

Defendant also urges that upon receiving the psychiatric report after the waiver, the Chief Judge of the Juvenile Court could not make a "full investigation" on the psychiatric phase of the case without taking testimony of the psychiatrists. But as I read the communication from the Chief Judge, I would infer that he assumed the accuracy of the report of Saint Elizabeths Hospital and still adhered to his former decision.

I, therefore, conclude that the requirements of the statute for a "full investigation" have been satisfied.

As the argument progressed, the next point raised by the defendant as grounds for invalidating the waiver is that the decision to waive was arbitrary and capricious.

On this point, he contends that there were no standards for determining the circumstances under which a juvenile should be waived, and therefore it was arbitrary and capricious.

It appears from the testimony of the sole witness called, namely the Executive Director of the Juvenile Court, that the previously published criteria or standards have been rescinded and that there are now no published standards or criteria in effect governing waivers, and were none at the time of the waiver in this case. I requested government counsel to provide me by testimony or otherwise with any unpublished standards, but none was forthcoming. Except for the suggestion in the testimony of the Executive Director that the Chief Judge may or may not have considered "the basic things that where in the published criteria", now re-

scinded, I have no information as to what unpublished standards, if any were taken into consideration on the occasion of the waiver herein involved.

It is disquieting to me to learn that judicial action is taken without governing standards available to the public. To me their absence permits judicial decision by whim or caprice, and lends to unequal treatment under the law to the parties before the Court. I do not find that this has occurred, because I have no information on the subject, but experience throughout the years demonstrates that it may occur in such circumstances.

■ However, when I look at the authoritative opinions, I find language upholding the view that standards or criteria of this kind are not necessary. For example in Briggs v. United States, 96 U.S.App.D.C. 392, 226 F.2d 350 (1955), the Court held the absence of standards in the statute did not conflict with the Constitution and the statute was sustained. Also, I find in Wilhite v. United States, supra, the statement that "the investigation called for by the statute is the administrative process within the Juvenile Court; no particular standards are prescribed." This of course relates to the statute, but if none is required in the statute to sustain its constitutional validity, it would be a reasonable assumption that none is required of the Juvenile Court. This last mentioned opinion further states, as above pointed out, that the "Juvenile Court conducts such investigation as is needed to satisfy that Court as to what action should be taken on the question of waiver." Further the Court of Appeals stated in Kent v. United States, (No. 17935 Oct. 26, 1964), D.C. Cir., 343 F.2d 247, that "the essence of the juvenile court system is subjective judgment—the skill and experience of the specialist judge brought to bear upon young people in trouble." In support of this view, and as providing general guide lines, is the statement in the statute of its purpose and basic aims found in § 11–902, D.C.Code 1961 Ed. There it is stated that its purpose "is to secure for each child under its jurisdiction such care and guidance, preferably in his own home, as will serve the child's welfare and the best interests of the state; to conserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal." I therefore, find that absence of published criteria or standards is not sufficient to justify a finding of arbitrariness or capriciousness.

■ Another point made by defendant in support of his contention that the waiver was arbitrary and capricious is that the Chief Judge made no findings, and this is born out by the social records. On this point, in the case of Kent v. United States, supra, the opinion states that there was no specification of precisely why the case was waived by the Juvenile Court Judge and then stated that "one" may not infer that his reasons fell outside the penumbra of Policy Memorandum No. 7 (the standards then in existence, *but now rescinded*), or that the Judge chose to treat this case in a manner wholly different from that contemplated by such memorandum. In footnote No. 6 to this opinion there is the following statement: "No opinion accompanied the decision. Although none is required by the statute, a useful purpose might be served in some cases at least by a discussion of the reasons motivating the determination. Unaided by such a discussion, our task remains the one of weighing the decision in the light of what the record discloses." This absence of findings in the record was not considered sufficient in that case to invalidate the waiver, and it would, therefore, appear that no findings, which I equate with an opinion in this context, are necessary.

■ The final point raised on the issue of arbitrariness and capriciousness, is whether the failure of the Juvenile Court Judge to consider at the time of the waiver the mental condition of the defendant is a relevant factor. I have already discussed the nunc pro tunc consideration given to the psychiatrist's re-

port under the topic of "full investigation". But Kent v. United States, supra, is also apposite to this discussion. There the Court stated that it assumed "that the Juvenile Court here was well aware that there might be a question in appellant's case as to whether his mental condition justified the imposition of criminal responsibility upon him. But we do not consider that the Juvenile Court either can or must finally and definitively resolve this issue as a pre-condition to a valid waiver."

█ Finally, I find that there has been no showing which overcomes the presumption of regularity and validity which clothes the judgment of the Juvenile Court, and therefore come to the conclusion that the waiver does not fall as being arbitrary or capricious.

For the foregoing reasons I sustain the validity of the waiver.

This brings me to the question of whether I should grant the motion to convene as a Juvenile Court absent a finding of invalidity of the waiver, pursuant to Green v. United States, supra, in which the Court of Appeals held that upon a determination by the District Court upholding the waiver, the District Court should decide whether defendant "should nevertheless be afforded the *parens patriae* treatment" provided in the Juvenile Court Act. In reaching a decision on this issue I am guided by United States v. Anonymous, D.C., 176 F.Supp. 325, in this Court. There Judge Youngdahl was convinced that the statute was fully complied with and that "a full investigation had been conducted" prior to the waiver, as I have here. He then stated that "nevertheless, so long as this Court is faced with the necessity of determining whether a juvenile should be tried as an adult or treated as a juvenile, it must consider which proceeding is more likely to protect society without the loss of salvageable children." In that case Judge Youngdahl found after perusal of the social records that defendant had no criminal or juvenile record and was not anti-social. He was, therefore, in a different category from the defendant here-

in who, as hereinafter set forth, had a criminal record and history of assaultive and anti-social behavior. The instant case is more like the one before Judge Keech in United States v. Stevenson, supra, where he upheld the validity of the waiver on the basis of defendant's anti-social behavior and belligerent and assaultive tendencies.

Turning to the social records, what I observed of defendant and statements of counsel for defendant, the facts and conclusions concerning defendant are hereinafter briefly summarized. I shall not give the details of what the social records disclose, but I see no way to escape providing a brief summary as showing the basis for my decision in determining whether to convene as a Juvenile Court or sit as a District Court. The summary follows:

At the time of the commission of the offense charged herein defendant was 17 years of age. In a little more than 4 months he would have been 18 years of age. If the offense had been committed at that time he would have been charged as an adult. He is a large, well developed individual, sophisticated and worldly-wise. He has a history of anti-social conduct since 1958. Efforts have been made by probation and supervision during that period to reclaim him. He has an assaultive and belligerent history. The offense charged was violent and serious, involving an attack on an officer of the correctional institution where he had been committed. He has a disregard for duly constituted authority.

█ To all intents and purposes he was an adult in fact, although a juvenile in law, at the time of the commission of the offense charged. He does not come within the basic aims and purposes of the Juvenile Court Act as above set forth. He has reached a point in life where he would not be benefitted by techniques and procedures applicable to juveniles, and the likelihood of his reclamation or rehabilitation thereunder is lacking the protection of society might be endangered if he were proceeded against other than as an adult. Under these circumstances and

these criteria, which I apply to myself in the absence of any others provided by the expertise of the specially qualified tribunal, in whose keeping these matters are entrusted, I come to the conclusion that I should not convene as a Juvenile Court, but that the defendant should be held for trial under the regular procedures in the District Court, where rehabilitation programs are provided for adults in his category, such as the Youth Corrections Act.

I am not unmindful that one of the purposes of the Juvenile Court Act is to spare the juvenile the stigma of a criminal record. In this case, if he is treated as an adult offender and should be convicted, he may still escape the burden of a criminal record under the Youth Corrections Act. That Act would seem to be specially tailored for an individual of defendant's type, that is, one who is too mature to derive benefits under juvenile procedure but yet young enough to present possibility of reclamation and rehabilitation by procedures other than those provided older defendants. This defendant would be eligible for sentence under the provisions of the Youth Corrections Act, and if he conducted himself properly he might not only be reclaimed and rehabilitated, but upon his unconditional discharge before the maximum of the sentence imposed, his conviction would be "automatically" set aside and the record thereof expunged.[4] Under the humane provisions of this Act, youthful offenders sentenced thereunder are not thrown into contact with hardened criminals, but are kept apart with others of their same age group with a view to their rehabilitation.

I am also not unmindful of the fact that defendant may be in need of psychiatric treatment. If he is and is found not guilty by reason of insanity, he will receive such treatment until he is restored sufficiently to be released safely to society. This would give him no record of a conviction of a criminal offense, and except for the record of being tried in this Court he would be in no different position than

if I convened as a Juvenile Court where the only authority which I have found in the statute for psychiatric *treatment* for juveniles is that contained in § 24–301 (d), D.C.Code 1961 Ed. This provides that if any person tried in the Juvenile Court for an offense is acquitted solely on the ground that he was insane at the time of its commission, the Court shall order such person to be confined in a hospital for the mentally ill. By coming to this Court, he is entitled to the same treatment if found not guilty by reason of insanity, and in addition to that his treatment may be continued, if necessary, after the age of 21. This would not be possible under a Juvenile Court commitment. If he should be found guilty, instead of not guilty by reason of insanity, and in the event the Court should believe that nevertheless he was in need of psychiatric treatment, that would still be possible by a sentence under the Youth Corrections Act. There are trained psychiatrists in attendance at the correctional institutions thereunder, and I am informed by the probation officer that the psychiatric services therein are adequate and satisfactory.

Fortunately, I am not confronted in this case with a child who has been waived to this Court but who in my judgment should be treated as a juvenile, and who is in need of psychiatric treatment other than that provided for him under Sec. 24–301(d), supra. Although I made repeated inquiries of government counsel as to what I could do in such circumstances in providing psychiatric treatment, I was given no information on the subject by argument or in testimony. Perhaps there is no provision for the treatment of children so situated, as distinguished from diagnosis, which is available under the Legal Psychiatric Services provided in Sec. 24–106, D.C. Code 1961 Ed.; but if there be none, I should suppose that the appropriate authorities would request Congress for relief.

Accordingly the Motion to convene as a Juvenile Court is denied.

---

4. Tatum v. United States, 114 U.S.App.D.C. 49, 310 F.2d 854 (1962).