## Borders *v.* Williams.

[No. 19,103.    Filed June 8, 1900.]

ELECTIONS.—*Contests.—Pleading.*—In an action to contest an election the complaint must set forth specifically the particular facts counted upon as invalidating the election.  *p. 39.*

SAME.—*Contests.—Pleading.*—An allegation in a complaint in an action to contest an election that the contestor received more votes than the contestee is not the averment of any fact within the purview of the causes for contesting an election as enumerated in §6312 Burns 1894, but is tantamount to a general averment that the judgment of the county board of canvassers was erroneous, and when pleaded as an independent ground of contest will be regarded as surplusage.  *p. 39.*

SAME.—*Contests.*—Where in an action to contest an election the issue joined was the failure of the board of canvassers to count all of the votes received by plaintiff in a certain precinct, it was error for the court to admit in evidence and count for plaintiff rejected ballots from another precinct.  *pp. 39-41.*

SAME.—*Contests.—Ballots.—Distinguishing Marks.*—A cross placed in the square at the left of two candidates for county commissioner in the same district does not constitute a distinguishing mark within the meaning of §§6248c and 6248g Burns Supp., and such ballot being regular in other respects should be counted for the candidates for other offices for whom it was properly marked.  *pp. 41-45.*

From the Pulaski Circuit Court.   *Reversed.*

*George Burson, W. W. Borders* and *B. Borders,* for appellant.

*H. A. Steis, M. M. Hathaway* and *F. J. Vurpillat,* for appellee.

HADLEY, J.—At the November election 1898, the county board of canvassers counted for appellant 1,383 votes, and issued to him a certificate of election as treasurer of Pulaski county. The board counted for appellee 1,377 votes for the same office. Appellee instituted this action under §6314 Burns 1894, §4758 Horner 1897, to contest appellant's election.

In the complaint and statement of his grounds of contest, appellee alleged that at said election there were counted for him 1,377, and for the contestee 1,383 votes, and the contestee was declared by the board of canvassers to be duly elected; that appellee contested said election on the following grounds: (1) That he had received a greater number of legal votes than had been received by the contestee. "(2) For malconduct of the board of canvassers of said election in this, to wit, that the contestor in precinct number one of Tippecanoe township of said county received ninety-three votes, and that the contestee, Borders, received seventy-two legal votes, but that in estimating and counting the votes of said precinct the said board of canvassers, by mistake, only counted eighty-three votes for the contestor and seventy-two votes for the contestee as the whole number of votes cast in said precinct for the said contestor and contestee, whereas, in truth, the contestor, Williams, received ninety-three votes in said precinct at said election, and that he, said Williams, is eligible to hold said office."

Appellant, Borders, as contestee, answered in two paragraphs: (1) A general denial, and (2) that, while the several precinct officers and county board of canvassers counted for him but 1,383 votes for the office of treasurer,

he, in truth and in fact, received 1,460 legal votes for said office, and that he received sixty-seven legal votes that were not counted for him, setting forth a number in each of twelve precincts aggregating sixty-seven; that said board of canvassers wrongfully counted as cast for the contestor forty-seven votes from precinct number one of Beaver township, and divers other votes in various precincts set forth in detail. Contestor, Williams, replied to the second paragraph of answer by a general denial. The commissioners awarded the election to the contestor by one vote, whereupon the contestee appealed to the circuit court, where the election was awarded to the contestor by four votes, from which judgment the contestee takes this appeal.

Under the issues formed as above stated, the court permitted the contestor, over the objection of the contestee, to introduce in evidence, and have counted in his behalf, two ballots that had been protested and rejected, in precinct number three of Monroe township, the same being marked in the record exhibits twelve and sixteen; and this action of the court presents the first question for consideration. It is earnestly contended by appellee that this evidence was admissible under the first clause of his complaint, which, in substance, alleges that he, the contestor, had received at said election a greater number of legal votes than were received by the contestee. By §6312 Burns 1894, any election may be contested for any of the following causes: "*First*, For irregularity, or malconduct of any member or officer of the proper board of judges or canvassers. *Second*, When the contestee was ineligible. *Third*, When the contestee, previous to such election, shall have been convicted of an infamous crime, such conviction not having been reversed nor such person pardoned at the time of such election. *Fourth*, On account of illegal votes."

The causes here enumerated must be held to constitute the only causes for which the contest of an election can be maintained; and it is provided by §6314 Burns 1894, that

Borders *v.* Williams.

"Whenever any elector shall choose to contest" any county or township office, "he shall file with the auditor of the proper county, within ten days after such person has been declared elected, a written statement *specifying the grounds of contest;*" that is to say, if irregularity or malconduct of election officers is relied upon, or if it is the contestee's ineligibility, or his previous conviction of crime, or on account of his having received illegal votes, the complaint, within these enumerated causes, must specifically set forth the particular facts counted upon as invalidating the election of the contestee. The averment that the contestor received more votes than the contestee is the averment of no fact within the purview of the enumerated causes. It challenges neither irregularity, nor malconduct of officers, nor ineligibility of contestee, nor his conviction of crime, nor his receipt of illegal votes. It is but tantamount to a general averment that the judgment of the county board of canvassers, pronounced upon the returns from the precincts, that the contestee had received the highest number of votes, was erroneous, which would be a mere conclusion, and present no question of fact, and, when pleaded as in this case, as an independent ground of contest, we must regard it as insufficient and surplusage.

In his second ground appellee specifically sets forth the malconduct of the board of canvassers in counting for him but eighty-three of the ninety-three of the legal votes received by him in the first precinct of Tippecanoe township, and upon this single fact he rests his contest. No complaint is made of the failure of the board to count for him contested ballots twelve and sixteen from the third precinct of Monroe township. This complaint appellant answered (1) by a general denial, and (2) that, while the board of canvassers counted for him but 1,383 votes, he in truth and fact received 1,460 legal votes; that he had received sixty-seven legal votes that were not counted for him by the board of canvassers, alleging a number of uncounted ballots in each

of twelve precincts aggregating sixty-seven. To this second paragraph of answer appellee replied by a general denial.

Here we have two issues joined,—one on the complaint as to the failure of the board to count for the contestor ten votes from the first precinct of Tippecanoe township, to which he claims to be entitled; the second on the second paragraph of the answer as to the failure of the board to count for the contestee sixty-seven votes to which he claims to be entitled from various precincts of the county; and upon these issues and the facts therein specifically set forth the case was made ready and submitted to the court for trial. And the court "shall be governed in such trial by the rules of law obtaining in the circuit courts." §6317 Burns 1894, §4761 Horner 1897; *Hadley* v. *Gutridge*, 58 Ind. 302; *Tombaugh* v. *Grogg*, 146 Ind. 99, 107.

One of the rules obtaining in the circuit court is that the evidence must be confined to the facts in issue, and that the plaintiff must recover *secundum allegata et probata*, or not at all. It is said in *Boardman* v. *Griffin*, 52 Ind. 101 at page 106: "It would be folly to require the plaintiff to state his cause of action, and the defendant to disclose his ground of defense, if, on the trial, either or both might abandon such grounds and recover upon others which are substantially different from those alleged." See, also, *Cleveland, etc., R. Co.* v. *Wynant*, 100 Ind. 160, 166; *Racer* v. *Wingate*, 138 Ind. 114, 131; *Neutz* v. *Jackson Hill, etc., Co.*, 139 Ind. 411, 414; *Stevens* v. *Reynolds*, 143 Ind. 467, 484; *Cincinnati, etc., R. Co.* v. *McLain*, 148 Ind. 188, 193; *Thompson* v. *Citizens Street R. Co.*, 152 Ind. 461, 465.

We perceive no ground for the contention that in contested election cases the procedure is more liberal than in the trial of other civil causes with respect to the issues and evidence. The statute requires the contestor specifically to state in his complaint the grounds of contest relied upon. That he shall therein state *all* the grounds he depends upon is emphasized in the provision that requires him to serve a

copy of the specifications upon the contestee, manifestly that the contestee may have timely notice of the particular facts against which he is called upon to defend his title. We concede that under proper issues the controlling question in such cases is, which of the contestants has received the greater number of legal votes? But we are not prepared to grant that the statute and settled rules of practice may be so far disregarded as to hold that a single ground of contest properly pleaded is sufficient to open up to adjudication other substantially different grounds without plea. Such a rule would invite loose and imperfect pleading, and give no warning to a contestee before trial of the real grounds upon which his case was liable to be determined.

As the rejection and failure to count for the contestor ballots twelve and sixteen from Monroe township constituted no part of the complaint or reply, and hence not within the issues, we must conclude that the court erred in admitting them in evidence, and counting them for appellee. So far as language employed in *Hadley* v. *Gutridge*, 58 Ind. 302, at page 315, may be construed as holding a different doctrine, the same is disapproved.

Appellant further claims that the court erred in refusing to admit in evidence, over the objection of appellee, and to count in behalf of appellant, original ballots numbered eight, nine, ten and eleven, which had been cast at the election, and returned to the office of the county clerk as contested, and not counted, ballots. The point of objection to each of these ballots is that the voter made a cross in the square to the left of the names of two candidates for the same office, namely, on number eight a cross to the left of the names of two candidates for county commissioner for the first district, on number nine, two candidates for the office of county commissioner for the second district, on number ten two candidates for sheriff, and on number eleven two candidates for commissioner of the first district. Otherwise each ballot was properly marked as indicating a

vote for a single candidate for each of the other offices voted for, and each indicating by a cross a vote for the appellant for the office of county treasurer.

By §3 of the act approved February 23, 1897 (Acts 1897 p. 49, §6248c Burns Supp.), it is provided that if the voter desires to vote for all the candidates of one party, he shall make a cross in the large circle containing the party emblem, and if he marks within the large circle he shall not mark elsewhere on the ballot unless there be no candidate for some office in the list printed under such party device, in which case he may indicate his choice by marking in the square to the left of the name of any candidate for such office on any other list; and, if the elector desires to vote a mixed ticket, he shall omit the mark from the circle inclosing the party device, and indicate his choice of candidates by making a cross in the square immediately preceding their names; and a mark upon the ballot in violation of these provisions shall be treated as a distinguishing mark. By section seven of the same act (§6248g Burns Supp.), it is, among other things, provided: "And any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates shall not be counted as to the candidate or candidates affected thereby."

These provisions of the statute must be construed together in determining when the character provided by law shall be regarded such a distinguishing mark as to invalidate the ballot. It is clear from the law itself that the legislature intended it should be so regarded only when its position upon the ballot makes doubtful the intention of the voter, or casts suspicion upon the integrity of the vote. The law provides that a mark in the circle inclosing the party emblem shall indicate the voter's intention to vote a straight ticket, and a mark in the squares below the emblem shall indicate his intention to vote a mixed ticket. So, if a mark appears in the large circle with the party emblem, indicating a straight vote, and also marks appear upon the small squares

below, indicating a mixed ticket, the two positions being inconsistent, the judges of election will be unable to determine whether a straight or mixed ticket was intended by the voter, and the whole ballot must therefore be rejected for uncertainty. Likewise, when a cross or other mark is found anywhere upon the ballot, without the circle and squares, its position will indicate no lawful purpose whatever, and discredit the entire ballot, and in such cases the cross must be regarded as a distinguishing mark in the sense that it invalidates the ballot. It is purity of election and a free and honest expression of the voter's will that is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the general appearance of the ballot is such as clearly to indicate an honest effort by the voter to comply with the law, and his choice of candidates may be clearly ascertained. *Bechtel* v. *Albin*, 134 Ind. 193, 200; *Zeis* v. *Passwater*, 142 Ind. 375.

It should be borne in mind, in passing upon the validity of a ballot, when the questionable mark is the prescribed cross, and the same touches or is within a circle or square, that many voters are unskilled in the use of the pencil, that some degree of nervousness frequently attends the preparation of the ballot, that the light in the booth is often poor, the vision of many impaired, and that in passing from one list of candidates to another in an imperfect light or vision it reasonably may, and doubtless does sometimes, happen that the voter by honest mistake places his mark upon a line or square different from the one intended; and when this is shown by the general appearance of the ballot, and the ballot is properly executed in all other respects, it should be counted for all the other candidates not affected by the mistake. This is the evident meaning of the statute last above quoted.

We are supported in this view from another consideration. After the passage of the election law of 1897, *supra,* the two great political parties, through their respective state

central committees, by mutual agreement, each selected a committee of three lawyers, eminent for their legal learning, to construe several provisions of the law. These committees met in joint session, and, having concurred in an opinion upon the correct construction to be given to each of the several sections of the law submitted to them, reported said opinion to their several party state central committees, which was by each central committee and by the state board of election commissioners approved, and accepted as the correct exposition of the law. This report was published by authority of the state board of election commissioners with the laws governing elections, and distributed throughout the State for the guidance of voters and election officers in holding the election of 1898; and in construing section seven of the act of 1897 with respect to the marking of ballots said joint committee employ the language following: "In case there are two or more persons to be elected to the same office, as in the case of senators and representatives in the legislature, judges of the superior court, justices of the peace, etc., if the name of one or more, but less than all, of such persons for a particular office are marked on one or more of the tickets, the ballot must be counted for the persons whose names are so marked; but if, in such case, the names of more persons than are to be elected to the particular office are marked on any ballot, such ballot can not be counted for any person for that office, for the reason that it can not be determined which of the right number to be elected were intended to be voted for, *but the ballot is valid and must be counted for the canidates for other offices as to whom it is properly marked.*" Election Laws and Instructions to Voters, 1898, p. 5. "If any ballot be found mutilated, defaced or marked so that it can be identified, it must not be counted; but the board should not adhere to such a severe construction of the law as will deprive innocent or honest voters of their rights. In determining the intention of the voter a careful but common sense discretion should be exercised." *Supra* p. 14.

In considering a similar report made upon the election law of 1889, this court said in *Parvin* v. *Wimberg*, 130 Ind. 561, at page 565, 15 L. R. A. 776: "It is fair to presume that the electors and election officers throughout the State accepted this as the true construction of the statute under consideration, and thereupon, in conducting the ensuing election, acted upon it. This construction having been accepted and acted upon by the officers whose duty it was to administer the law, the courts should not now ignore it, unless it is palpably wrong." See authorities there cited. And adopting as our own the further language of the court in that case: "The construction placed upon the statute by the committee to whom it was referred is not palpably wrong, but, on the contrary, we think the conclusion it reached is the correct one." We conclude, therefore, that ballots eight, nine, ten and eleven should have been admitted in evidence and counted for the appellant.

Under the special finding of facts by the court appellee, Williams, received a total of 1,389 votes, and appellant, Borders, received a total of 1,385 votes. As we have seen, the court erroneously admitted in evidence and counted for appellee ballots twelve and sixteen, which will reduce his legal votes to 1,387. The appellant is entitled to have added to 1,385, so found by the court, ballots eight, nine, ten, and eleven, erroneously excluded by the court, thus making appellant's total of legal votes, 1,389, which is the largest number of legal votes received by any candidate at the election for the office of county treasurer, and which duly elected him to said office.

There are other questions arising upon the exceptions to the conclusions of law and under the motion for a new trial, the decision of which would not change the result to which we have arrived, and which we will not, therefore, consider. Judgment reversed, with instructions to restate the conclusions of law, and render judgment for the appellant in accordance with this opinion.