IN THE MATTER OF JOHNSON, ETC. *v.* STATE OF INDIANA.

[No. 20,095.   Filed November 30, 1964.   Concurring opinion filed December 15, 1964.]

*Al S. Woolbert,* of Anderson and *Albert W. Ewbank,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Edgar S. Husted,* Deputy Attorney General, for appellee.

PFAFF, J.—The appellant, William David Johnson, was charged with having committed an act of delinquency, adjudged to be a juvenile delinquent, and committed to the Indiana Boys' School. A motion for new trial was overruled, and this appeal follows.

It is argued that the court did not acquire jurisdiction of the person of the minor or of his parents; that there was a failure to issue or serve summons upon the minor or his parents, and that there was no waiver thereof.

The petition was filed by the Probation Officer on May 9, 1963, alleging that the act was committed on May 6, 1963. Said petition set forth, among other matters, that the minor was in the care and custody of his mother and father, stating their names and addresses, and asked that summons be issued requiring them to appear. Trial was had on the following day.

Section 9-3209, Burns' 1956 Replacement, provides as follows:

"After a petition shall have been filed and after such further investigation as the court may direct, *unless the parties hereinafter named shall voluntarily appear,* the court shall issue a summons reciting briefly the substance of the petition, and requiring the person or persons who have the custody or control of the child to appear personally and bring the child before the court at a time and place stated. . . . . " (Emphasis supplied)

It is further provided by §9-3210, Burns' 1956 Replacement:

" . . . It shall be sufficient to confer jurisdiction if service is effected at least twenty-four (24) hours before the time fixed in the summons for the return thereof."

The principal question presented is whether the court acquired jurisdiction of the person. No question is presented as to the court's jurisdiction of the subject matter or of the particular case.

While the record in this case is not as clear as it might be, appellee does not seriously dispute the fact that no summons was ever issued or served.

The Supreme Court in *Harris et ux.* v. *Souder, Supt., etc.* (1954), 233 Ind. 287, 290, 119 N. E. 2d 8, has ruled upon the effect of the absence of the issuance and service of summons in the following language:

> " . . . As parents, they had an interest in the custody and welfare of their child, and in the absence of waiver or statutory exceptions, without summons the court acquired no jursidiction over the juvenile or his parents. In *Ford* v. *State* (1952), 122 Ind. App. 315, 104 N. E. 2d 406, the Appellate Court held that lack of notice under §9-3209, Burns' . . . made the judgment void. We agree with this construction."

In the case before us, the court's entry on the date of trial contains the following:

> "Comes now the Court, William David Johnson a juvenile is present in Court and accompanied by his father, William Johnson and represented by an attorney, Wayne Thornburg, a member of this bar."

It will be noted from the wording of the entry that the minor, and not his father, was the one represented by an attorney. The record proper shows nothing as to the presence of the mother, but the bill of exceptions containing the evidence discloses that she was called and testified as a defense witness.

Appellee argues that there was such jurisdiction of the person in view of the actual presence of the minor and his parents and the fact that no objection was made

in any manner contesting such jurisdiction; that there was a voluntary appearance and any error was not prejudicial in view of such presence. Appellee quotes at length from *Watson, etc.* v. *Dept. of Public Welfare* (1960), 130 Ind. App. 659, 165 N. E. 2d 770, but that case differs from the present one in that there a summons was actually issued and served (though it may have been defective) and the sole parent was not only present in court but came with an attorney who entered his appearance for such parent. Neither does the case of *In Re Pierson* (1943), 114 Ind. App. 195, 51 N. E. 2d 91, aid appellee. There a summons was issued for both the minor and his parents, and trial was had less than twenty-four hours after service, but at the time specified in the summons. The opinion does not disclose any failure to serve the summons. The court found that there was a voluntary consent to proceed with the matter without delay.

The principles which control our decision in the present case are set forth by the Supreme Court in the case of *Eaton, Treasurer* v. *Union County National Bank* (1895), 141 Ind. 159, 40 N. E. 693, and the cases there cited. The Supreme Court at page 163 said:

" . . . As said in *Kuntz* v. *Sumption,* 117 Ind. 1: 'A man may be subpoenaed as a witness in an action pending against him, but unless he is summoned or notified as a party, under some law authorizing a summons or notice, the proceedings are utterly void.' With no knowledge of the pendency of proceedings against him, the presence of a defendant in open court and his responses to inquiries by the court do not constitute an appearance. *Merkee* v. *City of Rochester,* 20 N. Y. Supreme, 157.

"The presence in court of one who is not served with process can not be regarded as a waiver of the notice required by law, without some step or action on his part signifying a willingness that the question tendered by the

complainant may be submitted to and determined by the court. 'There must be some formal entry, or plea, or motion, or official act to constitute an appearance.' *McCormack* v. *First National Bank, etc.* 53 Ind. 466; *Scott* v. *Hull,* 14 Ind. 136."

An appearance must constitute a part of the record, and whether there is an appearance must be determined from the record. *McCormack* v. *The First National Bank of Greensburgh et al.* (1876), 53 Ind. 466; *Scott and Another* v. *Hull and Others* (1860), 14 Ind. 136. As this court said in *Newton, Administrator* v. *Pence* (1894), 10 Ind. App. 672, 677, 38 N. E. 484:

" . . . It can not be said to constitute an appearance for the record to recite merely that 'now come the defendants.' "

Based upon the above authorities, we conclude that there was no appearance by the minor's parents in this case and no waiver of the issuance and service of summons, and the court therefore lacked jurisdiction of the person.

We need not decide the effect of the failure to serve summons upon the minor, but do note the following dictum in *Harris et ux.* v. *Souder, Supt., etc., supra,* at p. 292:

" . . . In the absence of express statutory authority, neither the infant, nor his guardian ad litem, can waive issuance and service of process, nor may either admit an issue against the infant in a suit at law or in equity. . . . "

See also annotation in 90 ALR 2d 293.

Judgment reversed.

Kelley, P. J., concurs, Mote, J., concurs in result.

Hunter, J., concurs in result with opinion to follow.

## CONCURRING OPINION.

HUNTER, J.—I concur only in the result reached in the main opinion and agree that the judgment should be reversed. However, I believe there are questions in this appeal that are not recognized by the main opinion that should be discussed by this court. The reasons are therefor discussed at length hereinafter.

Some of the matters discussed here are not presented by the appellant in a precise manner and ordinarily this court does not search the record for reversal. Nevertheless, where the interests of minors are involved, we are permitted to do so. *McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N. E. 654. Also, the above rule is supported in Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice,* §2783, at p. 363 which states:

> "While the court is not required to search the record for errors it is not so restricted that it must close its eyes to what is clearly before it. (citing *John's Cash Furniture Stores* v. *Mitchell* (1955), 126 Ind. App. 231, 125 N. E. 2d 827, transfer denied 2/20/56; *Franklin* v. *Hunt* (1961), 132 Ind. App. 575, 178 N. E. 2d 464.)"

The present juvenile statute as amended was adopted originally in 1945 and sets forth the procedural steps necessary to bring an alleged delinquent child before a juvenile court. The section of the statute relative to information, investigation and petition as amended by the Acts of 1959 is found in Burns' Indiana Statutes Annotated (1964 Cumulative Pocket Supplement) and reads as follows:

> §9-3208 "Information — Investigation — Petition. Any person may and *any peace officer shall give to the court information* in his possession *that there is within the county* or *residing within the county,*

*a* dependent, neglected or *delinquent child.* Thereupon, *the court shall,* as far as possible, *make preliminary inquiry to determine* whether the interest of the public or of the child require *that further action be taken.* Whenever practicable *such inquiry shall include a preliminary investigation of the home* and *environmental situation* of the child, his *previous history* and the *circumstances of the condition alleged* and *if the court shall determine* that *formal jurisdiction should be acquired, shall authorize a petition to be filed by the probation officer:* . . . *Such petition shall be verified and shall contain a statement of the facts constituting such* dependency, neglect or *delinquency as defined in this act (§§9-3201—9-3225)* . . . (Acts 1945, ch. 356, §8, p. 1724; 1959, ch. 76, §1, p. 155.)" (my emphasis)

Further, the juvenile act provides relative to the matters of summons—notice—custody of child in Burns' Indiana Statutes Annotated, 1956 Replacement §§9-3209 and 9-3210 as follows:

§9-3209 "Sumons — Notice — Custody of child. —*After a petition* shall have been *filed* and *after such further investigation as the court may direct, unless the parties hereinafter named shall voluntarily appear, the court shall issue a summons* reciting briefly the substance of the petition, and requiring the person or persons who have the custody or control of the child to appear personally and bring the child before the court at a time and place stated . . .

*If it appears that the child is in such condition or surroundings that his welfare requires that his custody be immediately assumed by the court, the judge may cause to be endorsed upon the summons an order that the officer serving the same shall at once take the child into custody.* (Acts 1945, ch. 356, §9, p. 1724.)" (my emphasis)

§9-3210 "Service of summons.—Service of summons shall be made personally by the delivery of attested copies thereof to the persons summoned: Provided, That if *the judge* is satisfied that it is

impracticable to personally serve such summons or the notice provided for in the preceding section (§9-3209), he *may order service by registered mail* addressed to their last known addresses. *It shall be sufficient to confer jurisdiction if service is* effected *at least twenty-four* (24) *hours before the time fixed* in the summons *for the return* thereof . . . (Acts 1945, ch. 356, §10, p. 1724.)" (my emphasis)

Other sections of the juvenile act pertinent to the matters discussed herein are set forth as follows:

"§9-3211 Failure to obey summons—Procedure.— If any *person summoned,* notified or subpoenaed *as herein provided shall, without reasonable cause,* fail to appear in person, . . . In case . . . it shall be made to appear to the judge that the service . . . or the welfare of the child requires that he shall be brought forthwith into the custody of the court, a warrant may be issued against the parent or guardian, *or the court may by interlocutory decree order that immediate custody* of the child be taken. (Acts 1945, ch. 356, §11, p. 1724.)" (my emphasis) §9-3212. "Release of children taken into custody.— . . . *In every such case the officer taking the child into custody shall immediately report the fact to the court* and the case shall then proceed as provided in this act. (Acts 1945, ch. 356, §12, p. 1724.)" (my emphasis)

§9-3222. "Detention of child—Place.—*No child under eighteen (18) years of age shall be detained in any prison, jail or lockup, nor shall such child be brought into any police station, vehicle or other place where such child can come in contact or communication with any adult convicted of crime or under arrest and charged with crime: Provided, That a child, whose habits or conduct are deemed such as to constitute a menace to other persons, may, with the consent of the judge or chief probation officer, be placed in a jail or other place of detention for adults, but in a room or ward separate from adults:* . . . (Acts 1945, ch. 356, §22, p. 1724.)" (my emphasis)

For the purpose of clarity, the *only* court entries that appear in the record as revealed by the transcript are as follows:

" . . . on the 9th day of May, 1963, the said William F. Lawler, Jr. Prosecuting Attorney for Madison County Circuit Court, filed an affidavit in this behalf, . . . " and which striking the caption reads as follows:

"AFFIDAVIT FOR DELINQUENCY
NO. 9061-J

Robert G. Simmons, Probation Officer for Madison County, Indiana respectfully represents to the Court as follows:

That said child was born on or about the 16th day of April 1947.

That the father of said child is William Johnson, and the mother of said child is Ruth Johnson, residing at 803 West 17th Street, Anderson, Indiana (and that the person having custody, control, supervision or guardianship of said child is William & Ruth Johnson, residing at 803 W. 17th St., Anderson, Indiana, in Madison County, Indiana.)

That said child did unlawfully commit an act of delinquency in this:

(1) That said juvenile did on or about the 6th day of May 1963, in a rude and insolent manner, unlawfully touch the person of Deloris McCotry, age 13, and did remove her clothing, fondle and caress her body with intent to gratify sexual desire.

contrary to the form of the statute in such case made and provided.

WHEREFORE, your Petitioner prays that summons issue to the said parents or Guardian of said child, requiring them and the child to appear before the Juvenile Court and show cause why said child should not be dealt with, pursuant to the Juvenile Court laws of the State of Indiana; and that the Court shall hear and determine the matters herein set forth, and shall enter such judgment and orders as the Court may deem best, and as will

best serve the welfare of said child and the citizens of this community and the State of Indiana.

ROBERT G. SIMMONS
Robert G. Simmons, Probation Officer

Subscribed and sworn to before me, this 9th day of May, 1963.
My Term expires December 31, 1966

RICHARD E. KREEGAR,
Richard E. Kreegar, Deputy Prosecuting Attorney"

" . . . on the 10th day of May, 1963, the following proceedings were had, . . . " and which striking the caption reads as follows:

'Comes now the Court, William David Johnson a juvenile is present in Court and accompanied by his father, William Johnson and represented by an attorney, Wayne Thornburg, a member of this bar.

Comes now the Court and this cause in (sic) submitted and the evidence is heard. The Court now finds that William David Johnson is a juvenile delinquent and he is sentenced to the custody of the Board of Trustees of the Indiana Boys School, until discharged by law.' "

At most the "affidavit of delinquency" could only be construed as a verified information. Also, it is readily apparent after even a casual reading of the record as above set forth, that there is a complete absence of court entries from the filing of the affidavit (or information) on the 9th day of May, 1963 to the hearing and findings of May 10, 1963. There is clearly a *hiatus* in the record as no entries appear between the original filing of the affidavit (or information) and the child's subsequent appearance before the court and consequent hearing and findings.

Burns' §9-3208, *supra*, clearly indicates that certain steps must be taken by the court between a presenta-

tion of "information" concerning a child's alleged acts of delinquency and a hearing to determine the same, even assuming that the affidavit as filed constitutes the "information" as contemplated by the statute. On the record in this cause, the *hiatus* is exemplified by the omission of the following procedural steps required by said section:

(1) There is no record of a preliminary inquiry to determine whether further action should be taken by the court;

(2) there is no record that any preliminary investigation was made prior to such an inquiry relevant to the home, the environmental situation, previous history and the circumstances of the alleged delinquency; and

(3) there is no record that the court made any determination that it should *acquire formal jurisdiction* over said child.

Further, there is non-compliance with said section in that there are *no facts appearing of record* that the court ever *authorized or directed the Probation Officer to file a* verified *petition* containing a statement of the facts constituting the alleged act or acts of delinquency. Although the main opinion apparently refers to the affidavit (or information) as the "petition", it is my opinion that it should not be so construed. Cursory examination of the affidavit (or information) filed in this cause reveals that in the body thereof it is drawn in the *style* of an affidavit *charging a criminal offense.*[1] This is the only pleading filed with the court and presumably the subsequent hearing was based upon such

---

1. The "affidavit for delinquency" filed by the Prosecuting Attorney might be considered to be a proper information preparatory to a waiver of jurisdiction over the subject child from the Juvenile Court to a court of criminal jurisdiction.

filing. Clearly, such a proceeding is not within the purview of the Juvenile Act.

The principal question presented by the appellant in this appeal relates to the court's alleged failure to acquire jurisdiction over said child in that there was no summons issued. In response to this question, the appellee stresses the point that the voluntary appearance (so characterized) by the child and his father on May 10, 1963, constituted a waiver of the issuance and service of summons. However, since it is my view that there was no petition filed there could be no voluntary appearance that would confer jurisdiction over said child pursuant to Burns' §9-3209, *supra*. The facts concerning the alleged voluntary appearance are interesting, to say the least. The record indicates that the child William David Johnson was apprehended and taken into immediate custody by the police on May 6, 1963, and first transported to the juvenile detention center where he was questioned at some length and then removed to the county jail. On May 10 while still in the custody of the sheriff, he was taken to court. There seems to be very few of the aspects of a so-called "voluntary appearance". In this regard it should be borne in mind that there is nothing appearing of record that would justify the child's incarceration in the county jail. Moreover, there is nothing in the record indicating the court ordered immediate custody. Summons was never ordered issued nor any notice ordered by mail in lieu thereof, consequently there is no record, and indeed there could be none made by the court authorizing the apprehension and the immediate taking into custody of said child. In fact, the appellee admitted both in oral argument and in the reply brief filed that no summons or notice was ever issued or served. No petition having been ordered by court and none having been filed, it necessarily fol-

lows that there could be no voluntary appearance for such an appearance could only be made *after* the filing of a verified petition. The statute is clear that after the filing of the petition, a summons or notice by mail shall be issued by the court for said child and his parents, unless there shall have been a voluntary appearance made. Burns' §9-3209, *supra*.

The act establishing juvenile courts in our state and outlining the procedures to be followed creates special statutory proceedings and the provisions of the statute must be followed. *Board of Childrens Guardians of Marion County* v. *Gioscio* (1936), 210 Ind. 581, 585, 4 N. E. 2d 199; *Shupe* v. *Bell et al.* (1957), 127 Ind. App. 292, 141 N. E. 2d 351; *Ford* v. *State* (1952), 122 Ind. App. 315, 104 N. E. 2d 406.

§9-3207 clearly states in part as follows:

> "*A person subject to the jurisdiction of the juvenile court* under this act 9-3201 et seq. *may be brought before it by either of the following means and no* other." (my emphasis)
> "a. *By petition* praying that the person be adjudged delinquent . . ."

The only exception authorized by statute is in the proviso added by amendment in 1959 to §9-3208, *supra*, which permits the county welfare department to file petitions asking for wardship of dependent and neglected children.

§9-3208, *supra*, implements §9-3207, *supra*. The legislative implementation is clear and specific. In a construction of the above two sections this court stated:

> "It was the intent of the legislature in such cases as the one before *us* that if the Judge of the Juvenile Court believed there was in his county, a delinquent . . . child and that he further believed that *formal jurisdiction should be acquired, the*

*court shall authorize a petition to be filed by the
probation officer of the court, and no one else,"
Shupe v. Bell, supra.* (my emphasis)

It is therefore clear that the filing of such petition may
only be ordered by the court. Likewise the intent of
the legislature is equally clear that there can be no ulti-
mate action by the court except by the information first
being given to the court. Consequently, the initial step
necessary to invoke the jurisdiction of the court is the
information. This court has previously decided in con-
struing §9-3208, *supra,* that it authorizes an investiga-
tion to determine:

(1) Whether a petition alleging delinquency shall
be filed;

(2) whether further action shall be taken, and

(3) whether the court shall proceed to a trial of
the question. *Kessler* v. *Williston* (1947), 117
Ind. App. 690, 75 N. E. 2d 676.

Further, this court has stated it was the intent of the
legislature in matters of delinquency that the court
must first believe and determine that it shall *acquire
formal jurisdiction* and then by proper order authorize
and direct the filing of a verified petition by the pro-
bation officer and no one else. *Shupe* v. *Bell, supra.*

The act clearly indicates that jurisdiction shall be ac-
quired in a special way and therefore a strict compli-
ance with its provisions particularly as to commence-
ment and notice, must be adhered to. *Shupe* v. *Bell,
supra;* 82 C. J. S., Statutes §395, pp. 945-946 supports
the above rule in the following way:

" . . . Statutes which take away, change or diminish
fundamental rights, statutory remedies for rights
unknown to the common law, and statutes which
provide new and extraordinary remedies, must be

*construed strictly* both as to the cases embraced within their terms and as to . . . methods to be pursued" (my emphasis)

Statutory requirements have been held to be jurisdictional for more than one hundred years in Indiana. *Borders* v. *Williams* (1900), 155 Ind. 36, 38, 57 N. E. 527; *Farlow* v. *Hougham* (1882), 87 Ind. 540; *Albee* v. *May* (1846), 8 Blackford 310.

Brown on Jurisdiction, 2d Edition, p. 19, §3a enunciates this rule:

"If the jurisdiction of the court is derived from statutory authority, in a proceeding not in accordance with the ordinary proceedings of the common law . . . in such cases the rule is more strict, and the *facts conferring jurisdiction must appear of record.*" (my emphasis)

It is readily apparent why the special procedure in all aspects outlined in the statutes must be carefully and scrupulously followed. Proceedings under the act are civil in nature, yet they are not triable by jury. Such proceedings are summary in character and often are conducted in chambers, the records are made upon special minute dockets and are recorded by the clerk of the court in separate and special order books, the proceedings and records are confidential in nature and not open to the public except upon order of the court. *Shupe* v. *Bell, supra; Marion County Board of Childrens Guardians* v. *Gioscio, supra; State ex rel. Bryant et al.* v. *Warrick Circuit Court* (1953), 232 Ind. 655, 115 N. E. 2d 742.

The Supreme Court of Indiana has recognized that the duty to follow statutory provisions is most clear as to the courts. It has been said that:

" . . . to the judicial department as the most conservative of all the coordinate branches of government, is entrusted the high duty of declaring and enforcing the law as it exists and upon the officers of that department rests, more strongly than upon the officers of other departments, the solemn obligation to unwaveringly abide by the established principles of law . . . " *Board of Childrens Guardians* v. *Gioscio, supra;* citing *Robertson* v. *State* (1887), 109 Ind. 79, 10 N. E. 582.

"No facts appear of record in this case to indicate the court's compliance with essential provisions of the Act from commencement to commitment. Therefore, the commitment of the child, William David Johnson, as a delinquent is clearly void. *Harris et ux.* v. *Souder, Supt., etc.* (1954), 233 Ind. 287, 290, 119 N. E. 2d 8; *Board of Children's Gdns. of Marion Co.* v. *Gioscio, supra;* *Ford* v. *State, supra.*"

It seems imperative that some comment should be made upon the lack of guidelines for the trial courts under the case law of Indiana relevant to the present Juvenile Court Act of 1945 as amended. It should be recognized that under the former Juvenile Court Act of 1903 as amended, the case law tended toward the rule that all procedural steps necessary to sanction a juvenile trial court's ultimate jurisdiction, judgment and disposition were presumed to have been followed in the absence of a clear showing to the contrary. See *In Re Pierson* (1943), 114 Ind. App. 195, 51 N. E. 2d 91. However, it should be recognized that the prior statutes set forth but few procedural steps; and perhaps the need for precise procedural steps was not deemed to be necessary considering the sociological problems of that era.

The modern problems of delinquency must be discussed in a context of conflicting but progressive theories. There are new causes, effects and remedies be-

ing advanced. These include corrective and rehabilitative methods, as well as probation, parole and supervision as protective deterrents, instead of the "punishment-alone" theory of yesterday. The social problems of today present a different picture than before for many reasons. Therefore, this court and the trial courts should keep upper most in mind the basic principle and purpose of the modern Juvenile Act because it is geared toward these new principles. The first section of the Juvenile Act reads as follows:

§9-3201. Purpose and basic principle.—*The purpose of this act* (§§9-3201—9-3225) *is to secure for each child* within its provisions *such* care, *guidance and control,* preferably in his own home, *as will serve the child's welfare and the best interests of the state;* and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.

*The principle* is hereby *recognized* that *children* under the jurisdiction of the court are *subject to the discipline* and *entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them.* (Acts 1945, ch. 356, §1, p. 1724.)" (my emphasis)

The jurisdiction for commitment of delinquent children to a state institution can only be justified on the *parens patriae* power of the state. 29 *Ind. Law Journal* 475, 481 (1954). Thus, the statute must be interpreted to conform to the principles essential for the valid exercise of that power. In furtherance of that interpretation, I would agree with the statement found in 29 *Ind. Law Journal, supra,* at p. 484 where it is said that:

"Parents should not be deprived of the custody of their children unless it is conclusively proved in the

juvenile court that by reason of their incompetency the best interests of child require state intervention."

This procedure seems to be called for in §9-3208 Burns' as amended which provides in part that:

" . . . inquiry shall include a preliminary investigation of the home and environmental situation of the child . . . "

In addition, under Burns' §9-3201, a basic principle of this act is " . . . to secure for each child . . . such care, guidance and control *preferably in his own home* . . . "

The omission of a preliminary investigation into the home, as seen in this case, is most serious because in addition to violating the Act, it deprives such child of a right to which he is entitled. In this light, it has been stated that *fair treatment* must be accorded in such proceedings, and the omission of inquiry into the home and environment might be a violation of such fair treatment requirement. *Pee* v. *United States* (C.A. D.C. 1959), 274 F. 2d 556, 559.

It is agreed that proper administration of justice requires that juvenile courts should efficiently and speedily dispose of pending matters of delinquency as fairly and justly as possible by orderly judicial process. However, this must be accomplished within the procedural framework of the statutes. Such a disposition is not only commendable, it is also a necessity. Nevertheless, such a process should not lead us to condonation by way of judicial affirmance, of undue haste and precipitancy in dispositions of pending matters. Where the courts' jurisdiction of cases does extend to children "the legal obligations due to them" as a "basic purpose and principle" is inviolate. It is only by a demonstrative devotion to such purposes and principles that the juris-

diction conferred upon juvenile courts may be justified in law.

Therefore, no matter how strongly the judge or the public may emotionally be impelled, no matter how much the ultimate judgment of the court may be justified upon evidence prematurely and illegally obtained, no matter how impatient the public or the judge may be with the frustration of momentary delays occasioned by compliance with orderly judicial process under the law, our courts at all levels must declare clearly and unequivocally that all of the legal obligations due such children and all of the protective safeguards for their "welfare and best interests" as well as those of "the state" shall be adhered to strictly. The principles of such an important and basic statutory provision cannot be cast aside; nor can any straying from the legislative guideposts be justified under a guise of "state paternalism", for juvenile court procedure has not been so socialized, nor does the Act contemplate that individual rights are so diminished. *In Re Coyle* (1951), 122 Ind. App. 217, 101 N. E. 2d 192.

Lest we be considered to be devoted to a so-called enlightened position of "molly-coddling" or "wrist-slapping", we hasten to state that: Jurisdiction by any court can never be attained when there is non-compliance with the governing statute; nor can jurisdiction be asserted upon the whim or caprice of the judge of the court; nor should jurisdiction and ultimate commitment depend upon a hearsay report by a probation officer or a social worker. Therefore, the ultimate disposition should be based upon the fair treatment under the law. *Pee* v. *United States, supra,* at p. 559. In the matter before us, it would appear that such tenet has not been followed.

In order to affirm the trial court in this cause we would in effect lend judicial sanction to the old axiom that "the end must justify the means". This we cannot and should not do.

For all of the foregoing reasons, I believe that this cause should be reversed.

NOTE.—Reported in 202 N. E. 2d 895.