**Lee SCHULER and Arlene Schuler, Appellants (Defendants Below),**

**v.**

**Tom LANGDON, Appellee (Plaintiff Below).**

**No. 3–681A145.**

Court of Appeals of Indiana, Third District.

April 14, 1982.

Rehearing Denied June 17, 1982.

Stephen G. Drendall, Legal Services Program of Northern Indiana, Inc., South Bend, for appellants.

James P. Hayes, Plymouth, for appellee.

HOFFMAN, Presiding Judge.

The Schulers rented a house from Mr. Langdon for $250 per month on a month-to-month basis. After the Schulers failed to make rental payments, Langdon served a ten-day notice to quit upon them on October 2, 1980. On October 22, 1980 Langdon filed suit for rent past due and immediate possession of the real property. The Schulers were served with notice of the claim and notice of the hearing on October 29, 1980, but failed to appear. The trial court entered a temporary order for possession of the real estate in favor of Langdon.

The Schulers were served with notice of the ejectment order of October 29, 1980 on that day, notifying them that they were to vacate the premises by October 31, 1980. They were also given notice of the final hearing to be held on November 7, 1980. However, once again, they did not appear for the November 7 hearing and the court entered a default judgment for Langdon in the amount of $914. The damages included $800 in unpaid rent, a $4 fee assessed for

dumping of trash, $100 for two days of hired labor, a $10 truck fee, and $100 in additional labor by Langdon, for a total of $1,014. A $100 security deposit held by Langdon was applied toward the judgment leaving a balance of $914. The court made a ruling that if the Schulers did not contact Langdon on or before November 17, 1980 to retrieve their personal property, the court would consider the property abandoned[1] and give Langdon authority to sell what he could to satisfy his judgment.

On November 18 the Schulers petitioned for protection of their personal property pursuant to IC 1971, 34–2–28–1 (1980 Burns Supp.), and on December 11, 1980 the Schulers filed a motion to set aside the judgment of November 7, 1980. The hearing was set for December 18, 1980. Both motions were denied on December 23, 1980. However, the court modified its order thus:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the monetary judgment against defendant in the amount of nine hundred and fourteen dollars ($914.00) plus court costs of twenty two dollars ($22.00) plus interest at the rate of 8% per annum from the date of judgment through the date judgment is paid in full shall stand. The judgment awarding plaintiff possession of any of defendant's property remaining on plaintiff's premises is modified to allow the plaintiff to levy against the defendant's goods that remain on plaintiff's premises only to the extent that the judgment is satisfied. The Sheriff is directed to remove the defendant's goods from the plaintiff's premises and to execute, in accordance with the law, against only those goods that will satisfy the monetary judgment. The Sheriff shall return the property not executed against to the possession of the defendants.

"Clerk is directed to forward a copy of this entry to counsel for the parties." Record at 29.

The *sole* issue appearing in Schulers' motion to correct errors and the *only* issue presented by this appeal is whether the personal property of a tenant is exempt from execution on a judgment in favor of the landlord.

It should first be noted that Langdon contends the Schulers failed to timely perfect their appeal. Since the Trial Rule 60 motion to set aside the judgment was filed within 60 days of the judgment, he argues it was, in fact, a Trial Rule 59 motion to correct errors. Therefore, the motion to correct errors of February 13, 1981 was not needed, making the filing of the praecipe and the transcript untimely, thus waiving the right to appeal.

This proposition misstates the holdings of this Court in previous opinions. When a TR. 60 motion is filed within 60 days of the judgment, it is true that it *may* substitute for a motion to correct errors and no other motion to correct errors is *required* for an appeal unless the trial court alters its judgment. However, a party *may* file a subsequent motion to correct errors after the TR. 60 motion is ruled upon. Nothing prevents him from doing so. *Roberts v. Watson* (1977), 172 Ind.App. 108, 359 N.E.2d 615; *In*

---

1. Abandonment of property divests the owner of his ownership, so as to bar him from further claim to it. Except that he, like anyone else, may appropriate it once it is abandoned if it has not already been appropriated by someone else.

   "Personalty, on being abandoned, ceases to be the property of any person, and thenceforth is no man's property, unless and until it is reduced to possession with intent to acquire title to, or ownership of, it. It may, accordingly, be appropriated by anyone, if it has not been reclaimed by the former owner, and ownership of it vests, by operation of law, in the person first lawfully appropriating

   it and reducing it to possession with intention to become its owner, provided, it has been said, the taking is fair. One so appropriating abandoned property, or any third person whom he may allow to take it, has a right to the property superior even to that of the former owner, and may hold it against him. In certain instances it has been held, probably as an application of these rules as to abandonment and appropriation, although this is not entirely clear, that personalty abandoned on the land of another became the property of the owner of such land." (footnotes omitted.)
   1 C.J.S. Abandonment § 9.

*re Marriage of Robbins* (1976), 171 Ind.App. 509, 358 N.E.2d 153.

■ In the case at hand, the trial court did modify its previous judgment when it ruled on the TR. 60 motion. It is the December 23, 1980 ruling on the TR. 60 motion which the Schulers are now appealing. When one motion has been filed and the trial court has altered its findings or judgment, the parties have the discretion to appeal immediately or to file a new motion to correct errors directed to the changed judgment. *See Breeze v. Breeze* (1981), Ind., 421 N.E.2d 647. In resolving the dilemma of the filing of two TR. 59 motions, our Supreme Court said in the *Breeze* case:

"Under these circumstances, we hold that TR. 59 takes precedence and that the trial court continues to have jurisdiction of the case for sixty days after a ruling on a motion to correct error when the ruling results in changed findings or judgment. If a second motion to correct error is filed within this sixty-day period, the trial court must make a ruling on this second motion to correct error. All time periods for the purpose of the appellate rules will then start from the time of the trial court's ruling on the second motion to correct error. If a praecipe was filed after the ruling on the first motion to correct error, no second praecipe is required. However, a praecipe is timely if filed within thirty days of the ruling on the second motion to correct error. A praecipe which was filed earlier will count as if filed from the date of the ruling on the second motion to correct error. The party then has ninety days from the ruling on the second motion to correct error to file the record of the proceedings. This interpretation and holding will provide courts, attorneys and the public with flexible but equitable rules of appellate procedure." 421 N.E.2d at 650.

Therefore, the Schulers' filings were timely and none of their rights to appeal were waived.

Langdon raises another contention concerning the mootness of the Schulers' claim since the balance of their property was returned to them. Suffice it to say, that if a party is entitled to have his property exempted from sale and that property is sold, then the party would be entitled to damages for the loss of that property.

The Schulers assert that they were entitled to the exemption because IC 1971, 34–2–28–1 requires a landlord to exempt personal property of tenants from execution on his judgment. IC 1971, 34–2–28–1 provides:

"Amount of exemption.—The following property of a debtor domiciled in the state of Indiana shall not be liable for levy or sale on execution or any other final process from a court, for any debt growing out of or founded upon a contract express or implied:

(a) Real estate or personal property constituting the personal or family residence of the debtor or a dependent of the debtor, or estates or rights therein or thereto of the value of not more than seven thousand five hundred dollars [$7,500]. The exemption under this subsection shall be individually available to joint debtors concerning property held by them as tenants by the entireties.

(b) Other real estate or tangible personal property of the value of four thousand dollars [$4,000].

(c) Intangible personal property, including choses in action (but excluding debts owing and income owing), of the value of one hundred dollars [$100].

(d) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(e) Any interest the debtor has in real estate held as a tenant by the entireties on the date of the filing of the petition for relief under the bankruptcy code, unless a joint petition for relief is filed by the debtor and spouse, or individual petitions of the debtor and spouse are subsequently consolidated.

"None of the foregoing provisions of this chapter shall apply to any judgment obtained prior to October 1, 1977.

"In no event shall the total of all exempted property under subsections (a), (b) and (c) exceed in value ten thousand dollars [$10,000]."

It is clear that as to debts founded upon a contract, personal property is exempted up to the amount set out in the statute. A rental agreement between a landlord and tenant is a contractual relationship. This Court reviewed a case in 1897 which was similar to the one before us now. At that time the Court held:

"If any part of the judgment against the appellant sounds in contract, as against that part appellant might have successfully demanded the exemption of her property from sale, had she first satisfied that part sounding in tort, the amount recovered upon the tort being easily ascertained in this case, and separable from the amount, if any, recovered upon the contract. If the judgment was in such a form as to preclude the possibility of separating one from the other, the rights of the judgment creditor against the judgment debtor would be reduced to the rights he possessed under the contract. *Keller v. McMahan*, 77 Ind. 62; *O'Neil v. Beck*, 69 Ind. 239; *Menzie v. Anderson*, 65 Ind. 239; *Ries v. McClatchey*, 128 Ind. 125 [27 N.E. 349]." *Thomas v. Walmer et al.* (1897), 18 Ind.App. 112, at 118, 46 N.E. 695, at 697.

The exemption applies to an action in contract, but not an action in tort. Therefore, the exemption is applicable to the portion of a judgment for rent past due, but not to that portion of the damages resulting from the holding over.[2] If the judgment is not divisible, then the entire judgment would be treated as if the action was in contract.

In the case at hand, the judgment was clearly capable of being divided between damages for contract and damages for tort. The trial court itemized the damages in its order to include $700 for rent ($800 minus the $100 security deposit) and $214 in other expenses incurred from the holding over. Therefore, the personal property exemption could be applicable to the $700.

However, in order to preserve this exemption, certain procedures must be undertaken. A review of the record discloses that none of these steps were taken. IC 1971, 34–2–28–11 requires that before a debtor shall receive the benefit of the exemption provided for by the act, he must make out and deliver to the officer holding the execution a schedule of all his property. The evidence shows no schedule of property was given to the sheriff who was ordered to execute the judgment.

■ The Schulers' petition for protection simply states (omitting caption):

"The undersigned Defendant herein petitions this Court to protect property rights and exemption rights of the Defendants from attachments and seizures as granted under I.C. 34–2–28–1."

The pleadings alone are to be considered in determining whether the action is one of tort or contract, since the exemption can only be claimed in actions arising out of contract. *Gentry v. Purcell* (1882), 84 Ind. 83. This pleading tells nothing. The petition even fails to allege the Schulers are resident householders of the state. *See Smith v. Wood et al.* (1882), 83 Ind. 522. The right of exemption must be shown. A general allegation of the existence of such a right is not sufficient. *Goldthait et al. v. Walker et al.* (1893), 134 Ind. 527, 34 N.E. 378.

Therefore, since the Schulers did not preserve their right to the personal property exemption as to the portion of the judgment which was for damages arising out of the contractual relationship, the entire judgment of the trial court is affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

A reading of nothing more than the judgment, both as originally entered and as

2. *See also* IC 1971, 32–7–3–6 (Burns 1980 Repl.).

modified, reveals plain error[1] in the trial court's judgment. It is the duty of this Court to correct such error.[2] As noted by the Majority Opinion, landlord-Langdon was awarded possession of the leased premises, damages (approximately $1,000), and possession of all of the tenants-Schulers' personal property. Langdon was to sell personal property sufficient to satisfy the damages, and pursuant to the modified judgment, then return the remaining property to the Schulers.[3] That judgment is in clear contravention of the law, violates the rights of the Schulers, and is a pernicious perversion of landlord-tenant and debtor-creditor law. For these reasons, I must dissent.

The Schulers wrongfully failed to pay their rent for a period in excess of two months and Langdon properly initiated an action for possession and damages. *See,* Ind.Code §§ 32–7–3–1 to –12 (1976). If required, the court

> "shall issue a writ, directed to some constable of the county, commanding him to deliver said premises to said plaintiff, by removing the defendant and his goods therefrom, or otherwise, so that the plaintiff have complete possession thereof, and also to levy such damages and costs, of the goods of said defendant as might be done by virtue of a writ of fieri facias."

IC 32–7–3–6. This statute clearly provides that the sheriff, and not the landlord, is to remove the tenant and the tenant's personal property, and if necessary, levy against the tenant's personal property.[4]

The Legislature specifically provided that the sheriff levy against the personal property "as might be done by virtue of a writ of fieri facias." *Id.* Fieri facias:

> are to contact the plaintiff on or before November 17, 1980 in order to retreive [*sic*] their property. If not [*sic*] contact is made, the Court will consider the property abandoned and give plaintiff permission to sell whatever property he can and apply that amount towards judgment and have the non-saleable property dumped."

The trial court modified that judgment on December 23, 1980, to read in pertinent part:

> "The monetary judgment awarded plaintiff on November 7, 1980, is proper. However, the judgment awarding plaintiff possession of any property defendants left on the leased premises is modified to allow plaintiff to execute only against defendant's property sufficient to satisfy the monetary judgment."

1. " 'Plain Error' is the civil law counterpart of fundamental error. It could just as well be called fundamental or clear error...." (footnote omitted)
Bagni, Giddings & Stroud, 4A *Indiana Practice-Appellate Procedure* § 17, p. 38 (1979).

2. Although the appellants failed to allege or argue this error, that failure does not prevent this Court from appellate review. As eloquently stated in *John's Cash Furniture Stores v. Mitchell* (1955), 126 Ind.App. 231, 125 N.E.2d 827, *reh. denied,* 126 Ind.App. 231, 127 N.E.2d 128:
> "While we are not required to search for errors not made manifest in the record as it is presented to us, we are not so restricted that we must close our eyes to that which is clearly before us. If we were limited entirely to the argument of counsel in reaching our decisions, to the exclusion of our own observation, we would many times permit gross injustice to prevail, and our oath to discharge our duties honestly and impartially would be a fruitless, futile and hypocritical gesture."
126 Ind.App. at 238, 125 N.E.2d at 830. *Accord, Sanford v. State* (1971), 255 Ind. 542, 265 N.E.2d 701; *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, *cert. denied,* 400 U.S. 930, 91 S.Ct. 187, 27 L.Ed.2d 190; *Bruggner v. Shaffer* (1965), 138 Ind.App. 183, 210 N.E.2d 439; *Johnson v. State* (1964), 136 Ind.App. 528, 202 N.E.2d 895 (Concurring opinion, J. Hunter); *Franklin v. Hunt* (1961), 132 Ind.App. 575, 178 N.E.2d 464.

3. The November 7, 1980 judgment of the trial court held, in part:
> "Court directs plaintiff to maintain possession of that property and defendnats [*sic*]

4. "At common law, and apart from statute or agreement providing otherwise, a landlord has no lien on the personal property of his tenant merely by reason of the relationship." *Highland Realty, Inc. v. Indianapolis Morris Plan, Corp.* (1964), 136 Ind.App. 208, 216, 199 N.E.2d 110, 114. *See also,* 49 Am.Jur.2d Landlord & Tenant § 675 (1970); 18 I.L.E. Landlord & Tenant § 331 (1959); 3A Thompson on Real Property § 1304 (1981 Repl.). There are no statutory landlord liens on the personal property of a tenant except in one limited circumstance. *See,* Ind.Code § 32–7–1–18 (1976) (allowing a lien upon the tenant's crops where tenant has agreed to pay as rent a part of the crop raised upon the leased premises). Therefore, there is no lien upon the personal property of the tenant on which the landlord may foreclose.

"Means that you cause to be made. In practice, a writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor."

Black's Law Dictionary, p. 754 (1968). The Legislature specifically pronounced that it is the duty of the sheriff, and not the landlord, to levy upon the personal property of the tenant.

The sheriff's levy upon the tenant's personal property is controlled by Ind.Code §§ 34–1–36–1 to –12 (1976). Those statutes provide that it is the sheriff's duty to sell the property, *id.* at –1, the types of property upon which the sheriff may levy, *id.* at –2 to –7, that the tenant (debtor) may select that property which shall first be levied upon and the priority of levy if not designated or insufficient, *id.* at –9 to –12.

The statutes IC 34–1–37–1 to –12 also control the sheriff's levy of execution and sale requiring the appraisement of the personal property. IC 34–1–37–1 is particularly important, providing that:

"No property shall be sold on any execution or order of sale issued out of any court for less than two-thirds of the appraised cash value thereof, exclusive of liens and encumbrances, except where otherwise provided by law."

*See also,* Ind. Rules of Procedure, Trial Rule 69. IC 34–1–37–2 also provides that:

"The sheriff, immediately upon levying an execution, shall proceed to ascertain the cash value of the property levied upon."

These statutes provide that each piece of personal property levied upon is to be listed, appraised and a cash value determined. *Id.* at –3 to –7.

These provisions were obviously intended by the Legislature to protect the individual debtor (tenant). The above statutes make sure the sheriff controls the sale of the property rather than some interested creditor or landlord. These statutes assure that the property is appraised at a fair value and not sold for less than two-thirds of that value. And finally, these statutes provide that the debtor (tenant) determines which property is to be sold first and which property will be preserved. Some of the evils these statutes are aimed at preventing are readily apparent in the present case.

The Schulers introduced evidence that the value of the personal property obtained by Langdon pursuant to the erroneous court order was $13,444. Langdon held the Schulers' property for nearly two months to satisfy his $1,000 judgment. During that period, Langdon's activities with regard to that property were without check. Langdon obtained the Schulers' property but there was no accounting as to what property was actually possessed by Langdon. Langdon stored and sold the property in a piecemeal fashion without any outside check for the procedure of his sales, for the valuation of the property to be sold, which items of property were actually sold, or to whom such items were sold. And there clearly was no check on Langdon to assure that the items of personal property were sold for a fair value, or even at the statutory two-thirds of their fair value.[5] And

---

5. The following testimony by Langdon is illustrative:

"Q. What did you do with [the Schulers' personal property]?
"A. [Langdon] Sold some to satisfy the debt."

\* \* \* \* \* \*

"Q. How much of the property is left?
"A. Well, I couldn't really tell you."

\* \* \* \* \* \*

"Q. Who did you sell the stuff to?
"A. Different individuals.
"Q. Well how did you go about selling it?
"A. I just wanted to sell it to satisfy the money that was owed to me."

\* \* \* \* \* \*

"Q. How much money did you realize from the sale of this property?
"A. I don't really know.
"Q. You are a businessman, you are pretty good with figures. You have no idea how much money you sold this property for?
"A. I would have to look at my list of what's left.
"Q. What is left?
"A. The kids [*sic*] toys, clothes."

\* \* \* \* \* \*

"Q. What else is left besides the kids [*sic*] clothes, toys, and athletic equipment?
"A. I would have to inventory it. I can't tell you right now.

finally, although Langdon assures us that he allowed the Schulers to pick up their remaining property at the end of the two month period,[6] there was again no check upon Langdon over which property was returned and which was sold or otherwise disposed.

In short, the Schulers and their property were completely at the mercy of Langdon. The judgment and Langdon's subsequent actions pursuant thereto created a truly inequitous situation. Not only was the judgment and Langdon's actions clearly against the laws of this State, but that judgment worked a very real and tangible injustice upon the Schulers. Such travesty of justice should not and can not go uncorrected by this Court.

"Q. Is there furniture available?
"A. I would have to look it over. I can't tell you what's available.
"Q. Well, where is [sic] these items?
"A. In storage.
"Q. Where?
"A. In one of my buildings.
"Q. Well, where? In a house, in a warehouse?
"A. It is in a garage."

* * * * * *

"Q. Everything you took out of this house is now in this garage?
"A. Not necessarily.
"Q. Well, where is everything else?
"A. In other storage.
"Q. Well, where is the other storage?
"A. I don't understand this, ah...
"Q. We want to know where their property is, Mr. Langdon. You took their property.
"A. I satisfied, I satisfied a debt owed to me.
"Q. You've got their property right now, don't you?
"A. Yes.
"Q. You've got it in storage somewhere?
"A. Less what I sold, ah huh."

* * * * * *

"Q. You can't give an accounting to the Court then except in very vague terms of what happened to this property?
"A. As I said some of it has been sold to satisfy some of the obligation owed me.
"Q. Here is a list of the property. Can you go through that and tell us what you sold?
"A. Looks like their twenty dollar ($20.00) chest of drawers.
"Q. So that ....
"A. Living room outfit has been sold. Bicycle's been sold.
"Q. Chest of drawers, bicycle are the only two (2) items that were sold on that list?
"A. And the living room outfit. And I imagine miscellaneous three (3) or four (4) other items.
"Q. In other words, you have everything else?
"A. I'd say that's right—I don't know, I didn't look at it that close."
Record, pp. 112–117.

6. Affidavit by Langdon, Record, p. 46.