### SUMMERS v. STATE OF INDIANA.

[No. 31,021. Filed June 23, 1967.
Rehearing granted October 10, 1967.]

Max Cohen, of Gary, for appellant.

John J. Dillon, Attorney General, and Ronald S. Timmons, Deputy Attorney General, for appellee.

MOTE, J.—Appellant, John Summers, together with one, James A. Smith, was charged by the affidavit of the prosecuting witness, Thomas Verplank, with the felony of aggravated assault in violation of the provisions of Chap. 22 of the Acts of 1933, § 1, p. 110, as follows:

> "Whoever intentionally or knowingly and unlawfully inflicts great bodily harm or disfigurement upon another person is guilty of aggravated assault and battery and upon conviction shall be imprisoned in the state prison for not less than one (1) year nor more than five (5) years, to which may be added a fine in any amount not to exceed one thousand dollars ($1,000)." Burns' Ind. Stat. Anno. 1956 Repl., Vol. 4, Part 2 ,§ 10-410, 1966 Cum. Pocket Supp.

It appears from the record that at the time of the alleged offense, Appellant was fifteen years of age, but soon thereafter arrived at the age of sixteen.

The Lake Juvenile Court caused to be filed in the Lake Criminal Court a printed form of waiver of jurisdiction by the first mentioned court to the latter court, in which it is stated in part, as follows:

> "After full preliminary investigation of certain alleged acts committed in Lake County, Indiana on or about the 10th day of February, 1966, by the above named child (Appellant), a child under the age of eighteen (18) years and a resident of Lake County, Indiana, and which child is subject to the jurisdiction of this Court, the Court now waives jurisdiction herein and orders the said child to be held for

trial under the regular procedure of the Lake County Criminal Court, And it is so Ordered. Judgment."

It also appears from the record that upon the filing of the affidavit charging aggravated assault, the judge of the Lake Criminal Court ordered Appellant's arrest and fixed his bond in the sum of $3,000.00.

On March 8, 1966, an attorney entered his appearance for the Appellant. On March 18, 1966, the cause was set for trial on March 31, 1966, but on said date, at the request of Appellant's attorney, the cause was continued. On April 29, 1966, the cause was set for trial on May 12, 1966, and on said latter date, the cause was submitted. Appellant appeared in person and by his attorney, waived arraignment and pleaded guilty to the charge, after having been advised and instructed as to his constitutional rights. It further appears from the record that the court briefly questioned Appellant, who stated: "I kicked him, but only once."

A typed statement dated February 11, 1966, appears in the record and concerns questions asked the Appellant about the prosecuting witness, as follows:

"Q. Why did you happen to pick out this boy, Tom Verplank?

A. Because I was mad at the Wallace (Lew Wallace High School) boys, because prior to this they beat up my younger brother, Fred, at a party in the Glen Park area.
* * *

Q. What part did you take in the attack of Tom Verplank & what did you see Jim Smith do to Verplank?

A. * * * & I kicked him on the top of his head while he was down."

The questions and answers set forth above are found in a written statement included in the transcript, however, we do not find any offer or admission of the same in to the record. Doubtless said statement, from which this coloquy was taken, was merely filed.

Appellant pleaded guilty to the charge and the court thereupon "committed (him) to the custody of the Board of Trustees of the Indiana Reformatory, to be confined by them, according to law, for a period of not less than one year nor more than five years from this date and to pay the costs of this prosecution."

Appellant has been admitted to bail during this appeal.

The section of the Statutes under which Appellant was charged, to which he pleaded guilty and was sentenced, is Chapter 22 of the Acts of 1933 entitled: "An Act defining the crime of aggravated assault and battery and fixing penalties," approved March 6, 1963, effective October 1, 1963, and previously quoted herein.

This appeal is predicated on the asserted error and the denial by the lower court of Appellant's Verified Motion for Leave to Withdraw Plea of Guilty, to which the State filed its unverified Answer and Memorandum, both of which, omitting the formal parts thereof, are as follows:

"VERIFIED MOTION FOR LEAVE TO WITHDRAW PLEA OF GUILTY.

Comes now the defendant and moves the court for leave to withdraw his plea of guilty and in support of said motion represents to the court as follows:

1. Defendant did on the 12th day of May, 1966, plead guilty to the charge of Aggravated Assault and Battery.

2. The plea of guilty was improvidently made in that the defendant was not in fact guilty of Aggravated Assault and Battery and that the defendant was not fully aware of the consequences of his act in pleading guilty to said charge.

3. Defendant is a minor child sixteen (16) years of age and had only conferred with his counsel in regard to the charge and the plea of guilty for less than thirty (30) minutes on the day the plea of guilty was entered; that prior to the time the defendant entered a plea of guilty he had never conferred with his counsel in regard to the charge or the making of such a plea of guilty.

4. That defendant has a substantial and meritorious defense to the crime of Aggravated Assault and Battery in that he did not inflict great bodily harm or disfigurement upon the complainant.

Wherefore, defendant prays that he be granted leave to withdraw his plea of guilty heretofore entered; that the court vacate and expunge from the record the judgment entered on such plea of guilty wherein the defendant was sentenced to a term of one to five years at the Indiana State Reformatory and that this cause stand for trial at the next term of court."

## "ANSWER AND MEMORANDUM.

Comes now the State of Indiana by its Prosecuting Attorney for the 31st Judidical Circuit, Henry S. Kowalczyk, by and through his deputies, Fred L. Mock and George M. Fisher, and in Answer to Defendants Verified Motion for Leave to Withdraw Plea of Guilty states as follows:

1. The State of Indiana admits the allegations contained in rhetorical paragraph number 1.

2. The State of Indiana denies the allegations contained in rhetorical paragraphs 2, 3 and 4.

Wherefore, the State of Indiana respectfully requests the Honorable Court to deny said Defendants Verified Motion for Leave to Withdraw Plea of Guilty, and for all other just relief in the premises.

## MEMORANDUM

The State of Indiana would further show the Honorable Court as follows:

1. On March 1, 1966, an affidavit was filed in and for the County of Lake, State of Indiana charging said defendant with the felony of Aggravated Assault and Battery in the Lake County Criminal Court together with a Waiver of Jurisdiction of the Lake County, Indiana Juvenile Court.

2. On March 2, 1966 an Arrest Warrant issued by the Clerk of Lake County, Indiana said defendant was placed in custody of the Sheriff of Lake County, Indiana.

3. On March 5, 1966, said defendant was released on bond from said custody.

4. On March 8, 1966, James H. Mason, Jr., an attorney who maintains an office in Gary, Lake County, Indiana,

duly entered his appearance in the Lake County Criminal Court for the said defendant.

5. On May 12, 1966, the said defendant appeared in person in the Lake County Criminal Court before the Honorable John H. McKenna, Judge of the Lake County Criminal Court, and was represented by his attorney, the said James H. Mason, Jr., who was then and there present; and the said defendant did then and there enter his plea of guilty to the said charge.

6. The said Judge did then and there apprise himself that the said defendant was in fact represented by the said attorney; and of the fact that the said defendant had consulted with the said attorney regarding prior discussion of the said charge with said attorney; and of the fact that the said defendant was fully aware of the character and meaning of the said charge as well as of the penalties attached thereto.

7. The said Judge did then and there fully and completely apprise and instruct the said defendant as to the said charge, the penalties of the said charge, and of all rights of the said defendant, constitutionally and otherwise.

8. The said Judge did then and there fully and completely apprise himself that the said plea of the said defendant was entered voluntarily, freely and understandingly.

9. The doctor's report was read into evidence to show that the said defendant did in fact inflict great bodily harm or disfigurement upon his victim, and the said defendant did then and there admit to the said Judge that he did in fact kick the said victim.

10. There is no abuse of discretion by refusing to grant a Motion for Leave to Withdraw Plea of Guilty where said plea was entered knowingly, voluntarily, and subsequent to being fully apprised of his rights by both the Court and his attorney who was then and there present."

The 1959 Indiana General Assembly, by Chapter 264, p. 632, enacted and there came into force on July 1, 1959 "An act concerning presenting investigations of defendants convicted of felonies" and by Chapter 175, Acts of 1961, declaring an emergency, the 1959 Act was amended to include subdivision 2

of § 1 *infra* §§ 9-2251—9-2252, Burns' Ind. Stat. Anno., 1956 Repl., 1966 Cum. Pocket Supp., as follows:

"Precommitment investigations — 'Felony' and 'criminal court of record' defined.—As used in this act (§§ 9-2251—9-2252):

1. The term 'felony' shall mean any crime the punishment for which may be one or more years of imprisonment in a penal or correctional institution.

2. The term 'criminal court of record' shall mean any court of record having criminal jurisdiction. (Acts 1959, chap. 264, § 1, p. 632; 1961, chap. 175, § 1, p. 390.)

Precommitment investigations—Procedure—Copy of report sent to penal institution.—No defendant convicted of a felony shall be committed by any criminal court of record before a written precommitment investigation report, prepared by a probation officer, is presented to and considered by the sentencing court. Whenever precommitment investigation is required, the probation officer making the investigation shall inquire into the circumstances of the offense and shall make such investigation as is prescribed by the state probation director of the department of correction. All local and state police agencies shall be required to furnish to the probation officer such records as the probation officer may request. Where in the opinion of the sentencing court, or the investigating authority, it is desirable, the precommitment investigation may include a physical and mental examination of the defendant. If a defendant is thereafter committed to any penal and correctional institution the investigating agency shall send a written report of its precommitment investigation to the penal institution at the time of commitment. (Acts 1959, ch. 264, § 2, p. 632.)"

This Court has had occasion to pass upon the meaning, force and effect of the above set forth 1959 Act, as amended by the 1961 Act, in *Ware* v. *State* (1963) 243 Ind. 639, 189 N. E. 2d 704, 375 U. S. 934, 11 Law Ed. 265, 84 Sup. Ct. 337, and the failure to follow the above-quoted provision. Judge Achor, speaking for the majority, said:

"The provision of the above statute is mandatory. Failure of the trial court to comply with its terms is therefore, under the facts of this case, a proper cause for redress to this court. The order of commitment made,

without such precommitment investigation and report, must be vacated."

We are not unaware of the language in *Wagner* v. *State* (1963) 243 Ind. 570, 188 N. E. 2d 914 (handed down by this Court on April 1, 1963 immediately prior to *Ware* v. *State,* supra, which was handed down on April 24, 1963) involving an assignment of an independent error instead of including the same in a motion for a new trial and which was held to constitute a waiver.

As the above-quoted statute definitely provides, and in accordance with *Ware* v. *State,* supra, precommitment investigations and reports prepared by probation officers, presented to and considered by the sentencing court, is mandatory. Since the record before us does not disclose compliance with the mandatory provisions of the statute, it is our opinion that no lawful judgment may be entered and this Court is required to guarantee such right to the Appellant.

We must state that where the liberty of one so young as the Appellant comes before us, we consider it our duty to be ever alert to the possibilities of an inappropriate sentence, when applied to the facts, or the lack of same, contained in the record. On the other hand, we are constrained to say that trial courts should exercise care in the making of a record which may come to courts of appellate jurisdiction, so that a full and complete recording of all stages of the proceedings in a criminal matter particularly, as well as all the evidence made available below, will be placed before us. To do otherwise, places us in the position of speculation, in which we cannot and will not engage.

In view of what we have stated, we think justice and equal justice better will be served if this cause is presented to us, if necessary, with a full and complete record, so that this Court may approach its duties with all of the knowledge made available to the trial court.

Since the plea of guilty was predicated upon a record which fails to show a compliance with the procedure in juvenile cases, the petition to withdraw the plea of guilty should █ have been granted. Therefore, the judgment is hereby reversed and the cause is remanded to the trial court which shall vacate the judgment and thereafter remand the cause to the Juvenile Court for proceedings consistent with this opinion.

Arterburn and Jackson, JJ., concur.

Hunter, C. J., concurs in result only, with separate opinion.

### CONCURRING OPINION.

HUNTER, C. J.—I concur only in the ultimate result of the majority opinion. However, I must disagree with the reasoning advanced, because in my view it fails to discuss and actually avoids the frailty of the proceedings before us when measured by the well established statutory requirements of the Juvenile Act and case law precedents establishing rights of juveniles. By avoiding any discussion of the Juvenile Act and the case law of Indiana as well as the rules announced by holdings of the Supreme Court of the United States, the legal discussion contained therein has no relevancy or materiality to the conclusion and holding.

The reasons for my view would appear to be obvious. The opinion sets forth the following:

(1) The criminal statute and penalty; and

(2) the motion to withdraw the plea of guilty and the answer thereto; and

(3) the pre-commitment investigation statute; and a discussion of the *Ware* and *Wagner* cases relating to rights of a defendant thereunder;

and thereafter concludes as follows:

"Since the *plea of guilty was predicated upon a record which fails to show a compliance with the procedure in juvenile cases, the petition to withdraw the plea of guilty*

*should have been granted.* Therefore, the judgment is hereby reversed and the cause is remanded to the trial court which shall vacate the judgment and thereafter *remand the cause to the Juvenile Court for proceedings consistent with this opinion."* (my emphasis)

When the body of the majority opinion is read and studied and then related to the holding as set forth immediately above it becomes abundantly clear that there is a complete absence of any discussion of the provisions of the Juvenile Act upon which the holding was predicated.

The opinion discusses the pre-commitment investigation statute at great length and further discusses the *Ware* and *Wagner* cases relative to the rights of a defendant thereunder. I agree with the accuracy of the rule as stated and the conclusion as to its application as related to *vacating a judgment of sentence,* however I fail to perceive its relevancy to a question raised and decided on a motion to withdraw a plea of guilty. It is my understanding of the law of Indiana that it may only be employed properly as authority to vacate a judgment of sentence and commitment until a proper investigation and report are filed and considered by a trial court. To legally imply, by the inclusion and discussion of pre-commitment report procedure, that it would be relevant and proper to a determination on a motion to withdraw plea, in my opinion is grave judicial error. Further it is my understanding of the law that a motion to withdraw a plea of guilty should only be ordered where *judicial discretion has been exceeded* by the trial court in denial thereof. For all of such reasons I believe it has no relevancy to the question determined by this court in this appeal.

Regretfully, therefore, I deem it necessary to point out the frailty of the record before us and suggest the disposition of this appeal under the very terms and provisions of the Juvenile Act and applicable case law precedents.

The proceedings from their inception in the Lake Juvenile Court demonstrate a complete absence of the rule of "fair

treatment" under "due process." *Pee* v. *United States*, 274 F. 2d 556 (D. C. Cir. 1959) ; *Kent* v. *United States*, 383 U. S. 541 (1966) ; *In Re Gault*, 387 U. S. 1 (May 8, 1967).

Furthermore it would appear that if the Lake Criminal Court committed error in refusing to grant appellant's motion to withdraw his plea of guilty and vacate the judgment of sentence, it was only in accepting the filing of the affidavit and assuming *pro forma* jurisdiction without first ascertaining that a proper waiver of jurisdiction and order of transfer had been lawfully effectuated from the Lake Juvenile Court. At any rate it is my conclusion that the Lake Criminal Court did not acquire jurisdiction of said child for disposition of his case as an adult criminal offender. Therefore it would appear that this court might have properly and logically determined that the Lake Criminal Court exceeded the bounds of judicial discretion and therefore should have granted the motion to withdraw the plea and ordered the matter remanded to the Juvenile Court. My reasons for such a positive position are more specifically set forth as follows:

To fully develop my reasoning it is necessary to review the legislative concepts of the powers, duties and responsibilities of Indiana Juvenile Courts encompassed within the four corners of the statutes creating and governing the matters entrusted to them.

The matters discussed here as in the majority opinion are not presented by the appellant in a precise manner in his brief and ordinarily this court does not search the record for reversal. Nevertheless, where the interests of minors are involved, we are permitted to do. *McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N. E. 654. Also, the above rule is supported in Wiltrout, *Indiana Practice,* Vol. 3, § 2783, at p. 363 which states:

"While the court is not required to search the record for errors it is not so restricted that it must close its eyes to what is clearly before it. (citing *John's Cash Furniture Stores* v. *Mitchell* (1955), 126 Ind. App. 231, 125 N. E. 2d

827, transfer denied 2/20/56; *Franklin* v. *Hunt* (1961), 132 Ind. App. 575, 178 N. E. 2d 464.)" See also *Johnson* v. *State* (1964), 136 Ind. App. 528, 202 N. E. 2d 895 (concurring opinion).

The purpose and basic principle of the Juvenile Act are revealed clearly as follows:

"The purpose of this Act . . . *is to secure each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare* and the *best interests of the state;* and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.

The principle is hereby recognized that children under the jurisdictions of the court are subject to the discipline and entitled to the protection of the state, which may intervene *to safeguard* them from neglect or injury and *to enforce the legal obligations due to them and from them."* Ind. Ann. Stat. § 9-3201 (1956).

At the outset it should be stated that the Lake Juvenile Court had the exclusive original jurisdiction of the subject matter, but more importantly, also of the appellant. The sections of the Juvenile Act denoting such specific original areas of jurisdiction are as follows:

"The juvenile courts created by this act shall have original exclusive jurisdiction, except when specifically waived by the court, in such cases as provided by law, in all cases of delinquent . . . children as defined by law . . ." Ind. Ann. Stat. § 9-3103 (1956).

The specific jurisdiction of the person and subject matter provided by law is demonstrated by the following section of the Juvenile Act:

"The words 'delinquent child' shall include any boy under the full age of eighteen (18) years . . . who:

(1) Commits an act which, if committed by an adult, would be a crime not punishable by death or life imprisonment . . ." Ind. Ann. Stat. § 9-3204 (1966 Supp.)

Jurisdiction shall be obtained in the following manner:

"A person subject to the jurisdiction of the juvenile court under this act may be brought before it by either of the following means and *no other:*

(a) *By petition praying that the person* be adjudged delinquent . . ." (my emphasis) Ind. Ann. Stat. § 9-3207 (1966 Supp.)

The steps necessary to the juvenile court's *exclusive original jurisdiction* are set forth as follows:

"Any person may and any *peace officer shall* give to the court information . . . that there is within the county or residing within the county, a . . . delinquent child. Thereupon, the court shall, as far as possible, make preliminary inquiry to determine whether . . . further action be taken. Whenever practicable such inquiry shall include a preliminary investigation of the home and environmental situation of the child, his previous history and the circumstances of the condition alleged and if the court shall determine that *formal jurisdiction should be acquired,* shall authorize a petition to be filed by the probation officer . . ." Ind. Ann. Stat. § 9-3208 (1966 Supp.) (my emphasis)

It has been held that § 9-3208, *supra,* is implementive of § 9-3207, *supra,* and that it was the intent of the legislature in such cases that if the judge of the juvenile court believed that formal jurisdiction should be acquired, the judge should authorize a petition to be filed by the probation officer and no one else. *Shupe* v. *Bell et al* (1957), 127 Ind. App. 202, 141 N. E. 2d 351. It should also be pointed out that the court prior to authorizing the petition to be filed would of necessity, after preliminary inquiry "based upon an information furnished," determine "that further action be taken . . ." *Johnson* v. *State* (concurring opinion), *supra.*

Thus the exclusive original jurisdiction may only be obtained by the juvenile court as set forth above and unless such preliminary statutory procedural steps are taken there is no jurisdiction established. It is *a fortiari* that jurisdiction

not obtained by the juvenile court cannot be waived to the criminal court.

The Supreme Court of Indiana has recognized that the duty to follow statutory provisions is most clear as to the courts. It has been said that:

"To the judicial department, as the most conservative of all the coordinate branches of the government, is entrusted the high duty of declaring and enforcing the law as it exists, and upon the officers of that department rests, more strongly than upon the officers of other departments, the solemn obligation to unwaveringly abide by the established principles of law." *Robertson* v. *State, ex rel. Smith* (1886), 109 Ind. 79, 83, 10 N. E. 582 cited in *Board of Children's Gdns. of Marion County* v. *Gioscio* (1936)., 210 Ind. 581, 585, 4 N. E. 2d 199.

*Shupe* v. *Bell, supra,* and 82 C. J. S., *Statutes,* § 395, pp. 945-946 support the above rule in the following way:

". . . statutes which take away, change, or diminish fundamental rights, statutory remedies for rights unknown to the common law, and statutes which provide new and extraordinary remedies must be *construed strictly* both to the cases embraced within their terms and as to methods . . . to be pursued." (my emphasis)

Statutory requirements have been held to be jurisdictional for more than one hundred years in Indiana. *Borders* v. *Williams* (1900), 155 Ind. 36, 38, 57 N. E. 527; *Farlow* v. *Houghan* (1882), 87 Ind. 540; *Albee* v. *May* (1846), 8 Blackford 310.

*Brown on Jurisdiction,* 2d Edition, p. 19, § 3a enunciates this rule:

"If the jurisdiction of the court is derived from statutory authority, in a proceeding not in accordance with the ordinary proceedings of the common law . . . in such cases the rule is more strict, and the *facts conferring jurisdiction must appear of record.*" (my emphasis)

The statute, Ind. Ann. Stat. § 9-3214 (1966 Supp.), providing waiver of jurisdiction is as follows:

"If a child fifteen (15) years of age or older is charged with an offense which would amount to a crime if committed by an adult, the judge, *after full investigation, may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult;* or such court may exercise the powers conferred upon the juvenile court in this act (§§ 9-3201—9-3225) in conducting and disposing of such case: Provided, That the judges of the juvenile courts of this state who shall waive the jurisdiction of such child as provided herein may at the time of the waiver fix a recognizance bond for the person to answer the charge in the court which would have jurisdiction of such offense if committed by an adult." (my emphasis)

§ 9-3214, *supra,* is identical in import to that considered by Supreme Court of the United States in *Kent* v. *United States, supra,* at pp. 547-548 and in such particulars reads as follows:

"If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, . . . *the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult . . .*" (my emphasis)

Jurisdiction conferred upon juvenile courts is justified only under the *parens patriae* power of the state. Thus, the statutes must be interpreted to conform to the principles essential to the valid exercise of that power. Where the court's exclusive original jurisdiction extends to children, "the legal obligations due to them" as well as "from them" as the "basic purpose and principle" of its functions, must be adhered to. See *Johnson* v. *State* (concurring opinion), *supra.*

The Supreme Court of the Unitel States in *Kent, supra,* at pp. 554-555 speaking of the *parens patriae* nature of juvenile court acts stated:

". . . The State is *parens patriae* rather than prosecuting attorney and judge. But the admonition to function in a 'parental' relationship is not an invitation to arbitrariness.

Because the State is supposed to proceed in respect to a child as *parens patriae* and not as an adversary, courts have relied on the premise that the proceedings are civil in nature and not criminal . . . It has been asserted that he can claim only the fundamental due process right to fair treatment." *Pee* v. *United States, supra.*

It has been held that a juvenile is not entitled to bail; to indictment by a grand jury; to a speedy and public trial; to trial by jury; to confrontation of his accusers; to immunity from self-incrimination, and in some jurisdictions (but not in Indiana) he is not entitled to an attorney. But see *In Re Gault, supra.*

In *Kent, supra,* there is a lengthy discussion and criticism of juvenile proceedings in general, suffice to say that in a decision on the question of waiver such as presented here, the court held that the determination of whether a waiver and transfer of the juvenile to the criminal processes of the District Court was a "critically important" proceeding. It was therefore declared that the scheme and purposes of juvenile proceedings were to be governed by non-criminal treatment "and the adult criminal treatment was an exception that must be governed by the particular facts of individual cases." The court there further stated that courts of appellate jurisdiction should conduct a *"meaningful review"* of the waiver and transfer proceedings. Review should not be remitted to assumptions. In order to engage in a meaningful review this court must have a statement of the juvenile court's reasons which motivated the waiver including, of course, a statement of the relevant facts. We may not assume that there are adequate reasons, nor should we merely assume that "full investigation has been made."

Accordingly we should hold here as it was held in *Kent, supra,* "that it is incumbent upon the juvenile court to accompany its waiver order with a statement of the reasons or considerations therefor." We as the reviewing court should hold that the statement, while not necessarily including a

conventional finding of facts, should be sufficient to demonstrate unequivocally that the strict statutory requirement of a "full investigation" has been met, and that a conscientious determination of the question of waiver has been made. We should require that the reasons for the order of waiver should be stated with sufficient specificity to permit a meaningful review.

It is readily apparent from an examination of the waiver and transfer order before us (see main opinion) that it is merely a printed order signed by the judge. It contains nothing but the words of the statute authorizing transfer. Under the rule in the *Kent* case it clearly is pregnant with the same defects as the order considered there and is only *pro forma.*

Further we should hold that the appellant Summers should have a right to a *full* hearing in the Lake Juvenile Court. He should have the right to counsel at such hearing; the right to confrontation of the witnesses against him; and the right to present evidence, if any be available to him, of any circumstances that would entitle him to the benefits that might be available to him and afforded to him by the provisions of the Juvenile Act. And it is only after such a hearing that a waiver and order of transfer to the Lake Criminal Court may be lawfully made. Such order and transfer should be accompanied with an appropriate statement of reasons as hereinbefore indicated. Of course a record of such proceeding should be made for the criminal court and this court in determining the justification for the transfer and waiver.

Judge Draper speaking for this Court in the case of *Cook* v. *State* (1951), 231 Ind. 695, 701, 97 N. E. 2d 625, 627 stated that ". . . constitutional rights should not be grudgingly extended . . ." It is my belief that such a succinct rule of guidance should govern this court in the disposition of the matter before us. We should "not hesitate," and in fact should "hasten" to extend the appellant "fair treatment" under "due process" as has been mandated by the federal courts in the

determination of rights of juveniles. It seems imperative we should face the responsibility for delineating guidelines to be used by the trial courts in the determination of matters under our Juvenile Act. Failure to recognize the development of the "fair treatment" rule under "due process" as it has rapidly developed since 1959 has inevitably led to the rules enunciated in the *Kent* and *Gault* cases, *supra*. Any failure to do so now, in my opinion, indicates an unwillingness and hesitancy to recognize and give credence and due weight to the problems developing in many areas of juvenile jurisdiction.

More importantly we fail in our responsibility to the trial courts.

For all the foregoing reasons we should hold that the Lake Criminal Court should vacate and expunge all of its entries in this cause and forthwith order the child remanded to the Lake Juvenile Court. The Lake Juvenile Court should be ordered and directed that all further proceedings in this cause should be consistent with this opinion.

NOTE.—Reported in 227 N. E. 2d 680.